771 N.W.2d 470 (2009)
283 Mich. App. 89
PEOPLE
v.
DUPREE.
Docket No. 281408.
Court of Appeals of Michigan.
Submitted March 3, 2009, at Detroit.
Decided May 28, 2009, at 9:00 a.m.
*473 Michael A. Cox, Attorney General, B. Eric Restuccia, Solicitor General, Kym L. Worthy, Prosecuting Attorney, Timothy A. Baughman, Chief of Research, Training, and Appeals, and Joseph A. Puleo, Assistant Prosecuting Attorney, for the people.
Ernst Law Firm, PLC (by Kevin Ernst), for the defendant.
Before: MURRAY, P.J., and GLEICHER and M.J. KELLY, JJ.
M.J. KELLY, J.
Defendant Roberto M. Dupree appeals by delayed leave granted his jury conviction of possessing or carrying a firearm while ineligible to do so as a result of a prior felony conviction (felon-in-possession), MCL 750.224f. The trial court sentenced Dupree as a fourth-offense habitual offender, MCL 769.12, to serve 48 months to 30 years in prison. On appeal, Dupree argues that the trial court improperly instructed the jury on his theory that he could not be convicted of being a felon-in-possession if he only temporarily took possession of the firearm at issue in order to defend himself during a life-threatening altercation. In order to resolve this issue, we must first determine whether temporary possession of a firearm for self-defense during a life-threatening altercation *474 constitutes an affirmative defense to being a felon-in-possession under Michigan law. We must then determine whether that defense applied in this case and whether the trial court properly instructed the jury on that defense. We conclude that there is such a defense under Michigan law, that it applied to the facts of this case, and that the trial court improperly instructed the jury on this defense. Further, because we conclude that the instructional error was not harmless, we reverse Dupree's conviction of being a felon-in-possession and remand for a new trial on this charge.

I. BASIC FACTS AND PROCEDURAL HISTORY

A. THE FIGHT AND SHOOTING
Dupree's conviction arises out of a fight and shooting at a party in September 2005. On the day in question, Dupree and a female companion went to the home of Dupree's sister-in-law, Adrian Dupree, to celebrate the birthday of Dupree's brother. Adrian's niece, Ashley Horton, and Horton's boyfriend, Damond Reeves, also attended the party. The party lasted several hours and primarily took place in the backyard. After it started to become dark, the party began to wind down and the remaining guests prepared to leave. At around this time, Dupree had an altercation with Reeves in the front of the home.
At trial, Reeves testified that he was preparing to leave the party when he asked Adrian to go inside and get Horton. According to Reeves, Dupree was looking at him and then called him a name and pushed him for no reason. Reeves testified that he and Dupree "tussled" for a time in the front yard, but Dupree eventually broke away from him, went into the house, and came out with a .38 caliber revolver. Reeves stated that Dupree then shot him three times.
Horton testified that she was in the house when she heard that Dupree and Reeves were fighting. Horton stated that she went out onto the porch and saw them fighting, but let them fight awhile. Horton said that she eventually tried to break up the fight, but Dupree pulled a gun and struck her in the face with it. Although the sequence of events was not entirely clear, Horton testified that she went into and out of the house on at least two occasions and that she called the police twice. Horton further testified that, at some point, Dupree came into the house, put the gun to her chin, and pulled the trigger. She stated that the gun did not fire"it just clicked."
Dupree and his witnesses disputed the version of events proffered by Horton and Reeves. Fallon Dupree testified that she was Dupree's niece and that she attended the party with her boyfriend, Brandon Monroe. Fallon stated that Horton and Reeves were very drunk and that they had been fighting throughout the party. At some point shortly before the fight, Horton went into Adrian's house and Reeves tried to follow her. Fallon said that after Reeves came onto the porch, Adrian was in the way and Reeves pushed her off the porch. Dupree then stepped in front of Reeves and told him that he could not show such disrespect to his sister-in-law and asked him to leave. In response, Reeves pushed Dupree and, after Dupree grabbed Reeves's shirt, both men fell off the porch. Fallon testified that when Dupree grabbed Reeves's shirt, the shirt bunched up and she could see a gun tucked into Reeves's waist. After she saw the gun, Fallon and Monroe decided to leave. Fallon stated that, as she was leaving, she heard a gunshot.
*475 Monroe's testimony at trial largely followed that of Fallon. Monroe stated that he too saw the gun on Reeves as Reeves and Dupree fell off the porch. Monroe also testified that he and Fallon decided to leave when they saw the gun.
Dupree testified that, as the party was winding down, he was on the front porch with Adrian. He stated that Horton and Reeves had had some "issue" between them throughout the party and that around the time of the altercation Horton came onto the porch. Dupree said that Adrian told Horton to go inside and Horton did. At that point, Reeves came onto the porch and tried to force his way into the house after Horton. When Adrian got in the way, Reeves pushed her off the porch. Dupree testified that he intervened and Reeves pushed him. As he lost his balance, Dupree grabbed Reeves and both men fell off the porch. Dupree said that when he grabbed Reeves, Reeves's shirt came up and he saw a gun tucked into his waist.
Dupree said that he was immediately afraid because Reeves was a very large man6 feet 5 inches and about 300 poundsand armed. Dupree said Reeves went for the gun and that he also tried to grab it. Dupree stated that he continued to struggle with Reeves over the gun when it went off. As the struggle moved toward the street, Dupree said the gun went off two more times. Dupree said he told Reeves to "just stop" and to "let go" when Reeves said "I'm hit" several times. Reeves then wandered over to a neighboring house. Dupree testified that he then walked back to the porch and asked Adrian to look and see if he (Dupree) had been hit. Dupree stated that his female companion came out and said "let's go" and he went with her. Dupree said that as they drove off, his companion told him to get rid of the gun, and he threw it out the window. Dupree denied hitting Horton and denied putting the gun to her head.

B. THE DEFENSE AND THE JURY INSTRUCTIONS
On the basis of these events, the prosecution charged Dupree with five felonies: assault with the intent to murder Reeves, see MCL 750.83, assault with the intent to murder Horton, felon-in-possession, felonious assault against Horton, see MCL 750.82, and carrying or possessing a firearm during the commission of a felony (felony-firearm), see MCL 750.227b. Dupree's trial counsel defended against these charges by arguing that Dupree did not assault Horton in any way and that his actions against Reeves were justified as self-defense. With regard to the felon-in-possession charge, Dupree's trial counsel argued that Dupree's temporary possession was justified under the circumstances.
Although Dupree's trial counsel argued that Dupree's temporary possession could not support a conviction for felon-in-possession under the facts of the case, he did not request a specific instruction to that effect. Instead, Dupree's trial counsel only requested a standard self-defense instruction. Nevertheless, the trial court on its own initiative instructed the jury that it could find Dupree not guilty of being a felon-in-possession if it concluded that he had possessed the gun under certain limited circumstances:
As to being a felon in possession, [Dupree] claims that the gun was produced in a struggle. And of course, if that's the case that the gun was produced during the course of a struggle and you find that it happened that way, that would be a defense to felon in possession provided you find that he did not keep the gun in his possession any longer than necessary to defend himself.
*476 After the jury left, Dupree's trial counsel objected to this instruction. Specifically, Dupree's trial counsel objected to that part of the instruction indicating that temporary possession for self-defense was a defense as long as Dupree did not keep the gun "any longer than necessary to defend himself." Dupree's counsel would rather have had the instruction state that it was a defense as long as Dupree had not kept the gun "any longer than necessary." Following this objection, the trial court asked Dupree's counsel to research the matter and present his authorities on the next trial date.
On the next trial date, Dupree's trial counsel stated that he had not found any authorities that indicated that the trial court's instruction was incorrect. However, the prosecutor suggested that the trial court should further instruct the jury regarding the felon-in-possession charge using an instruction on momentary innocent possession from a case then before our Supreme Court. The trial court agreed.
After the jury was brought in, the trial court instructed it concerning momentary innocent possession as a defense to the charge of being a felon-in-possession. The trial court indicated that the elements of this defense were
that the defendant had the gun because he had taken it from someone else who was in wrongful possession of it, or he took it from him because of necessity, because he needed to. Second, that the possession after taking the gun was brief. And third, that it was the defendant's intention to deliver the gun to the police at the earliest possible time.
The trial court clarified that this instruction replaced the previous instruction. Dupree's trial counsel objected to this instruction as well. He stated that, although the jury could consider momentary innocent possession as a defense, it could also consider possession for self-defense as a separate defense, which did not require an intent to deliver the gun to the police.
After deliberating, the jury found Dupree not guilty on the charge of assaulting Reeves with the intent to murder him, not guilty on the charge of assaulting Horton with the intent to murder her, not guilty of feloniously assaulting Horton, and not guilty of felony-firearm. However, the jury found Dupree guilty on the charge of being a felon-in-possession.
This appeal followed.

II. INSTRUCTIONAL ERROR ON DUPREE'S AFFIRMATIVE DEFENSES TO BEING A FELON-IN-POSSESSION

A. STANDARDS OF REVIEW
This Court reviews de novo claims of instructional error. People v. Martin, 271 Mich.App. 280, 337, 721 N.W.2d 815 (2006). Likewise, this Court reviews de novo questions of law such as the proper interpretation of criminal statutes in the context of traditional common-law principles. See People v. Tombs, 472 Mich. 446, 451-459, 697 N.W.2d 494 (2005).

B. WAIVER
As a preliminary matter, I believe we must first address the prosecution's argument that this Court is without authority to review Dupree's claim of instructional error because Dupree's trial counsel extinguished any error when he waived Dupree's right to have the jury properly instructed. The prosecution notes that after the trial court instructed the jury on the revised defense of innocent misconduct, the trial court asked defendant's trial counsel if he had anything further to add, to which he responded, "No, your honor." On appeal, the prosecution argues that this response constituted a waiver of Dupree's *477 claim of error. I do not agree that this statement constituted an intentional relinquishment of Dupree's right to have the jury properly instructed on his defense theory. See People v. Carter, 462 Mich. 206, 215, 612 N.W.2d 144 (2000).
In contrast to the prosecution's claim that Dupree's trial counsel took "varying stances" on the instructional issue, I conclude that Dupree's trial counsel was both consistent and persistent in his objections. Dupree's trial counsel did not request a particular instruction regarding defenses to being a felon-in-possession. Instead, he appeared to believe that the standard self-defense instruction was sufficient and actually argued to the jury that Dupree could not be convicted of being a felon-in-possession if he took the gun in self-defense. The trial court did not agree that the standard self-defense instruction was adequate; the trial court expressed its belief that, absent a more specific instruction, the jury would have to find Dupree guilty of being a felon-in-possession. For that reason, the trial court instructed the jury that, if it found that Dupree took the gun in the fight and only possessed it as long as necessary to defend himself, the jury should find Dupree not guilty of being a felon-in-possession. Dupree's trial counsel objected to this instruction on the ground that the trial court should have limited the instruction to "as long as necessary" rather than including the modifying phrase "to defend himself." In response to this objection, the trial court instructed Dupree's counsel to research the matter and present his authorities on the next trial date.
On the next trial date, Dupree's counsel indicated that he had not found any authorities that contradicted the trial court's earlier instruction. At this point, the prosecutor asked the trial court to reinstruct the jury on Dupree's affirmative defense. Specifically, the prosecutor asked the trial court to modify the instruction to include elements applicable to the defense of momentary innocent possession, including the requirement that the defendant have the intent to turn the gun over to the police. Dupree's trial counsel again objected. He noted that, although the jury might properly consider this, the law did not actually include a duty to turn the firearm over to the police. This objection was entirely consistent with the theory of Dupree's trial counsel that possession while necessary to ensure one's safety is an affirmative defense to being a felon-in-possession. Despite this objection, the trial court asserted that the law required this instruction, explained its reasoning, and then gave the jury the new instruction over the objection. It was only after this that the trial court asked Dupree's trial counsel whether he had anything further. Taken in context, Dupree's trial counsel's response is nothing more than an assertion that he had no further objections. Consequently, Dupree's trial counsel did not waive his earlier claims of instructional error.

C. AFFIRMATIVE DEFENSES TO BEING A FELON-IN-POSSESSION

1. DURESS AND SELF-DEFENSE
An affirmative defense is not a defense that is directed at an element of the crime; rather it is one "`that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it....'" People v. Lemons, 454 Mich. 234, 246 n. 15, 562 N.W.2d 447 (1997), quoting 21 Am. Jur. 2d, Criminal Law, § 183, p. 338; see also People v. Pegenau, 447 Mich. 278, 319, 523 N.W.2d 325 (1994) (opinion by BOYLE, J.) (noting that "an affirmative defense in effect concedes the facial criminality of the conduct and presents a claim of justification or excuse"). Michigan has long recognized the existence of two common-law *478 affirmative defenses that are relevant to the facts of this case: duress and self-defense. See People v. Luther, 394 Mich. 619, 622, 232 N.W.2d 184 (1975) (noting that duress is a "well recognized defense"), citing People v. Repke, 103 Mich. 459, 61 N.W. 861 (1895); People v. Coughlin, 65 Mich. 704, 705, 32 N.W. 905 (1887) (examining the burden of proof when a defendant claims that a killing was justified by self-defense).
The defense of duress involves a situation in which the defendant acted under threat of death or serious bodily harm. See Luther, 394 Mich. at 622, 232 N.W.2d 184 (noting that the defendant allegedly escaped from prison out of fear of homosexual rape). In such cases, the defense "excuses the defendant from criminal responsibility for an otherwise criminal act because the defendant was compelled to commit the act...." Id. It is sometimes characterized as a choice of evils and is applicable to situations in which it is preferable, as a matter of social policy, to permit a person to commit a crime in order to avoid a greater harm. Lemons, 454 Mich. at 246, 562 N.W.2d 447. In order to establish duress, the defendant must offer evidence from which a jury could conclude the following:
A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;
C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and
D) The defendant committed the act to avoid the threatened harm. [Luther, 394 Mich. at 623, 232 N.W.2d 184.]
Similarly, common-law self-defense excuses an otherwise unlawful act typically the killing of another person under circumstances in which the defendant acted out of fear of death or serious bodily harm. People v. Riddle, 467 Mich. 116, 126-127, 649 N.W.2d 30 (2002). The otherwise unlawful act will only be justified under this defense "if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." Id. at 127, 649 N.W.2d 30.
Under the facts alleged by the defense at trial, Dupree was presented with a clear choice of evils: he had to either commit the crime of being a felon-in-possession by taking Reeves's gun or risk death or serious bodily harm at Reeves's hands. Thus, the defense of duress appears applicable. Likewise, Dupree presented evidence from which a jury could findand apparently did findthat he acted in self-defense when he struggled over the gun with Reeves and ultimately shot Reeves three times. However, there are no published Michigan authorities directly addressing the application of traditional common-law defenses to MCL 750.224f.[1] Consequently, *479 it is not clear whether or how these defenses might apply to the crime of being a felon-in-possession.
In order to determine whether possession under duress or in self-defense constitutes an affirmative defense to the prohibition against the possession of firearms by felons, I believe we must first turn to the language of the statute itself. Under MCL 750.224f, a person who has been convicted of a felony may not "possess, use, transport, sell, purchase, carry, ship, receive, or distribute a firearm" unless certain conditions are met. See also People v. Perkins, 473 Mich. 626, 703 N.W.2d 448 (2005). Although the statute exempts persons who have had their felonies expunged or set aside or who have been pardoned, see MCL 750.224f(4), it does not otherwise provide for affirmative defenses. Normally, that would end our inquiry. People v. Pasha, 466 Mich. 378, 382, 645 N.W.2d 275 (2002) (stating that, if statutory language is clear, "no further construction is necessary or allowed to expand what the Legislature clearly intended to cover"). However, at least four justices of our Supreme Court have recognized that criminal statutes must be interpreted in light of Anglo-American criminal jurisprudence and the background rules of the common law. See Tombs, 472 Mich. at 452-459, 697 N.W.2d 494 (opinion by KELLY, J.), 465-466 (opinion by TAYLOR, C.J., concurring in relevant part).
In Tombs, Justice KELLY analyzed whether a defendant had to possess the criminal intent to distribute or promote child pornography in order to be convicted of violating MCL 750.145c(3). Id. at 452, 697 N.W.2d 494. Justice KELLY first noted that the statutory language did not include an explicit mens rea requirement. Id. Nevertheless, Justice KELLY rejected the contention that this silence reflected a legislative intent to permit convictions without proving any mens rea. Instead, Justice KELLY noted that the common law traditionally disfavored offenses that did not require criminal intent, id. at 453-454, 697 N.W.2d 494, citing Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), and cited with approval federal authority for the proposition that criminal statutes must be construed "`in light of the background rules of the common law,'" Tombs, 472 Mich. at 455, 697 N.W.2d 494, quoting Staples v. United States, 511 U.S. 600, 605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). For that reason, "[a]bsent some clear indication that the Legislature intended to dispense with the requirement, we presume that silence suggests the Legislature's intent not to eliminate" the common-law requirement of criminal intent. Tombs, 472 Mich. at 456-457, 697 N.W.2d 494.[2]
Using this same reasoning, I conclude that the Legislature's enactment of MCL 750.224f must be construed against the background of Anglo-Saxon common law, which includes the defenses of duress and self-defense. See United States v. Panter, 688 F.2d 268, 271 (C.A.5, *480 1982). As the court in Panter aptly noted, the Legislature's "failure to provide specifically for a common-law defense in drafting a criminal statute does not necessarily preclude a defendant charged with violating that statute from relying on such a defense. This conclusion is unassailable; statutes rarely enumerate the defenses to the crimes they describe." Id., citing United States v. Bailey, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Indeed, to conclude that the traditional common-law defenses do not apply would ascribe an effect to MCL 750.224f that is "`more comprehensive than was contemplated and one inconsistent with our philosophy of criminal law.'" Panter, 688 F.2d at 271, quoting Morissette, 342 U.S. at 250, 72 S.Ct. 240. And I will not lightly presume that the Legislature intended to deprive personseven ex-felonsof the fundamental right to defend against a sudden and potentially deadly attack. See Panter, 688 F.2d at 271 ("We do not believe that Congress intended to make ex-felons helpless targets for assassins."). Because there is no indication that the Legislature intended to abrogate or modify the application of traditional common-law affirmative defenses to MCL 750.224f, I conclude that the defenses of duress and self-defense are still applicable to a charge of being a felon-in-possession.

2. THE JUSTIFICATION DEFENSE
Courts in many foreign jurisdictions have recognized that a defendant might be justified in temporarily possessing a firearmeven though the possession is unlawful if the possession is immediately necessary to protect the defendant or another from serious bodily harm. However, there is no consensus on the proper label for this defense; courts have used the terms duress, necessity, self-defense, and justification.[3] Furthermore, several courts have recognized that, in felon-in-possession cases, the distinction between the defenses of duress and self-defense is largely immaterial. United States v. Butler, 485 F.3d 569, 572 n. 1 (C.A.10, 2007) (recognizing that these defenses have become merged in modern decisions); see also State v. Padilla, 114 Hawai'i 507, 513-514, 164 P.3d 765 (Hawai'i App., 2007). I agree with those courts and, for the sake of simplicity, shall use the term "justification" to describe the defense at issue.
*481 Although I have determined that a defendant may raise a justification defense to a charge of being a felon-in-possession, I nevertheless conclude that this defense must be analyzed in the context of the purpose underlying MCL 750.224f. See Butler, 485 F.3d at 575, quoting United States v. Perez, 86 F.3d 735, 737 (C.A.7, 1996) ("We must take care not to transform the narrow, non-statutory justification exception ... into something permitting a felon to possess a weapon for extended periods of time in reliance on some vague `fear' of street violence. Indeed, `[i]f ex-felons who feel endangered can carry guns, felon-in-possession laws will be dead letters.'"); State v. Castrillo, 112 N.M. 766, 771, 819 P.2d 1324 (1991) (noting that the elements of duress must be analyzed in the context of the purpose behind the prohibition against the possession of firearms by felons). With the enactment of MCL 750.224f, our Legislature determined that those persons who have committed felonies should not be permitted to possess or use firearms. The purpose behind the prohibition is to ensure that those persons who are more likely to misuse firearms do not maintain ready possession of them. See People v. Tice, 220 Mich.App. 47, 51-52, 558 N.W.2d 245 (1996); Castrillo, 112 N.M. at 771, 819 P.2d 1324 ("Its purpose is to keep firearms from felons because the law presumes they are more likely to unlawfully use firearms or to resort to force in violation of the law."). This purpose would be severely undermined if former felons were permitted to arm themselves whenever they happened to have some generalized fear of being attacked. See Perez, 86 F.3d at 737 (noting that former felons are likely to live in areas where they are exposed to danger and engage in behaviors that expose them to danger). For that reason, I conclude that a defendant who is otherwise prohibited from possessing a firearm will only be justified in temporarily possessing a firearm if the possession is immediately necessary to protect the defendant or another from death or serious physical harm. See Lemons, 454 Mich. at 247, 562 N.W.2d 447 (noting that, under a duress defense, the threatening conduct must be imminent); Riddle, 467 Mich. at 127, 649 N.W.2d 30 (noting that self-defense is available only if the defendant reasonably believes that the threat of death or serious bodily injury is imminent). Likewise, the defendant's unlawful possession must end as soon as the immediacy of the threatened harm has passed:
The defendant is entitled to maintain possession of the firearm so long as the imminent need for the protection persists. The defendant cannot obtain possession of the firearm before the imminent need for protection arises, see United States v. Hudson, 414 F.3d 931, 933-934 (C.A.8, 2005); Perez, 86 F.3d at 736-37, and must terminate possession of the firearm at the earliest possible opportunity once the danger has passed. See Butler, 485 F.3d at 572-573; United States v. Paolello, 951 F.2d 537, 540-542 (C.A.3, 1991); United States v. Beasley, 346 F.3d 930, 935-936 (C.A.9, 2003). [Padilla, 114 Hawai`i at 513-514, 164 P.3d 765 (citation format modified).]
I further agree with those authorities that have held that a defendant may only raise justification as a defense to otherwise unlawful possession of a firearm if the defendant did not recklessly or negligently place himself or herself in a situation where he or she would be forced to engage in criminal conduct. See Riddle, 467 Mich. at 127 n. 19, 649 N.W.2d 30 (noting that one who starts a fight or goes someplace expecting a fight cannot claim self-defense); Perez, 86 F.3d at 737 ("More often than not the basis of his fear will be his own involvement in illegal activities; *482 and when the danger that gives rise to the fear results from engaging in such activitiesfrom `looking for trouble'the defense is barred."); United States v. Agard, 605 F.2d 665, 668 (C.A.2, 1979) (noting that the defense of duress is not available if the defendant initiated the altercation). Likewise, a defendant may only resort to unlawful possession as a last resort; that is, the defendant must have no reasonable legal alternative to violating the law in order to avoid the threatened harm. See Hudson, 414 F.3d at 934 (noting that the defendant could have reported her fear about a rogue officer to the police instead of arming herself); Perez, 86 F.3d at 737 (noting that the defendant could have called the police and asked them to investigate the suspicious persons sitting in a car outside his home). Thus, using the elements of duress as the foundation, see Lemons, 454 Mich. at 247, 562 N.W.2d 447, I conclude that a defendant may raise justification as a defense to being a felon-in-possession by introducing evidence from which the jury could conclude all the following:
(1) The defendant or another person was under an unlawful and immediate threat that was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm, and the threat actually caused a fear of death or serious bodily harm in the mind of the defendant at the time of the possession of the firearm.
(2) The defendant did not recklessly or negligently place himself or herself in a situation where he or she would be forced to engage in criminal conduct.
(3) The defendant had no reasonable legal alternative to taking possession, that is, a chance to both refuse to take possession and also to avoid the threatened harm.
(4) The defendant took possession to avoid the threatened harm, that is, there was a direct causal relationship between the defendant's criminal action and the avoidance of the threatened harm.
(5) The defendant terminated his or her possession at the earliest possible opportunity once the danger had passed.

3. NATURE OF THE INSTRUCTIONAL ERROR
In the present case, Dupree introduced evidence from which a reasonable jury could have concluded that each element of the justification defense had been met. Dupree, Fallon, and Monroe testified that Reeves started the fight at issue when he pushed Dupree and that Reeves was armed. Dupree further testified that he feared Reeves not only because he saw the gun, but also because Reeves was very large. Dupree also stated that he began to struggle with Reeves over the gun when Reeves tried to grab it and that the gun went off three times during the struggle. Thus, there was evidence that Dupree was placed under an unlawful and immediate threat of death or serious bodily harm and that the threat was sufficient to have caused in the mind of a reasonable person the fear of death or serious bodily harm.
Moreover, there was testimony that suggested that Dupree was lawfully present at his brother's birthday party, was not armed before the fight with Reeves, and only took possession of the gun at issue during the struggle. Given this testimony and the testimony that Reeves started the fight, a reasonable jury could have concluded that Dupree did not recklessly or negligently place himself in a situation where he would be forced to engage in criminal conduct and that there was no reasonable legal alternative to his taking possession of the gun in order to avoid the threatened harm.
*483 Finally, although there was evidence from which a jury could have concluded that Dupree failed to timely terminate possession of the gun, there was also evidence from which a reasonable jury could have concluded that Dupree did terminate his possession at the earliest possible moment after the danger had passed. Dupree testified that the struggle over the gun finally ended after he told Reeves to "just stop" and to "let go," after which Reeves said "I'm hit" several times and then moved off. This testimony suggested that Reeves was still struggling over the gun even after being shot and that it was Reeves who ultimately broke off the fight. There was testimony that, after Dupree and Reeves separated, Reeves went across the street and sought help from a neighbor and eventually went back into the street, where he was picked up by some passers-by. Dupree said that he kept the gun after his separation from Reeves and walked back to the house, where he asked Adrian to check and see if he had been hit. Dupree still possessed the gun when his female companion came out and urged him to get into her truck and leave. Dupree testified that he finally got rid of the gun while driving away from the scene. Thus, although there is testimony that the physical struggle had ended and that the parties had separated, it is not entirely clear whether Reeves actually left the scene before or after Dupree left with his female companion. Given this testimony, a jury could have found that it was reasonably necessary for Dupree to maintain possession in order to ensure that Reeves did not return and try to retake possession of the gun. Consequently, Dupree introduced sufficient evidence to present a justification defense.
Although Dupree was entitled to a jury instruction on his justification defense to being a felon-in-possession, Dupree's trial counsel did not request such an instruction. Instead, Dupree's trial counsel apparently relied on a the self-defense instruction when he argued to the jury that Dupree could not be convicted of being a felon-in-possession if he acquired possession during the fight. Hence, the trial court did not err by failing to give a modified duress or self-defense instruction similar to the one discussed above. Nevertheless, the trial court determined on its own initiative that it should instruct the jury that if it found that Dupree acquired the gun from Reeves during the fight, Dupree would not be guilty of being a felon-in-possession if he had only kept the gun as long as necessary to defend himself. With this instruction, the trial court essentially recognized that the justification defense applies only as long as the defendant relinquished the unlawful possession at the earliest possible opportunity once the danger has passed. Hence, this instruction was not entirely inaccurate and might not have prejudiced Dupree's defense.
Nevertheless, on the following day the prosecution asked the trial court to modify its earlier instruction by telling the jury that it could only find Dupree not guilty of being a felon-in-possession if it also found that Dupree intended to turn the gun over to the police within a reasonable time. Dupree's trial counsel objected to this instruction because he felt that his theory of self-defense did not require a finding that Dupree intended to turn the gun over to the police; rather, Dupree's unlawful possession was excused as long as his possession was necessary to ensure his protection. Dupree's trial counsel was correct; although the jury might have been instructed under the now-defunct momentary innocent possession theory as an alternative basis for excusing Dupree's continued possession after the fight ended, see People v. Hernandez-Garcia, 477 Mich. 1039, 1040, 728 N.W.2d 406 (2007), *484 overruling People v. Coffey, 153 Mich.App. 311, 395 N.W.2d 250 (1986), this defense was distinct from the justification defense presented by Dupree's trial counsel. And Dupree presented evidence from which the jury could have found that Dupree's continued possession was excused under a duress or self-defense theory.
Finally, I cannot agree with the prosecution's assertion that any error in the instruction was harmless.[4] As I have noted, Dupree was entitled to present a justification defense to being a felon-in-possession, yet by reinstructing the jury in the way that it did, the trial court effectively eliminated the possibility that the jury could find that Dupree's continued possession after his separation from Reeves was justified. There was no evidence that Dupree intended to turn the gun over to police; indeed, Dupree testified that he threw the gun out of the window as his female companion drove him from the scene of the fight. Assuming that the jury followed the trial court's final instructions, see People v. Graves, 458 Mich. 476, 486, 581 N.W.2d 229 (1998), the trial court effectively directed a verdict of guilty on the charge of being a felon-in-possession. Therefore, this error was not harmless. See People v. Lukity, 460 Mich. 484, 495, 596 N.W.2d 607 (1999). For this reason, we reverse Dupree's conviction on the charge of being a felon in possession of a firearm, vacate his sentence for that offense, and remand for a new trial consistent with this opinion.
Reversed and remanded for a new trial. We do not retain jurisdiction.
GLEICHER, J., (concurring).
I concur with the lead opinion's conclusion that the incorrect jury instruction resulted in error requiring reversal of defendant's conviction. I write separately to highlight the reasons that a new trial is required and to respond to the dissent.
The lead opinion holds that "a defendant who is otherwise prohibited from possessing a firearm will only be justified in temporarily possessing a firearm if the possession is immediately necessary to protect the defendant or another from death or serious physical harm." Ante at 481. As the lead opinion explains, the precise elements of this narrowly circumscribed defense appear in People v. Lemons, 454 Mich. 234, 247, 562 N.W.2d 447 (1997). In Lemons, the Supreme Court specifically noted that the contours of the duress defense include that "the threatening conduct or act of compulsion must be `present, imminent, and impending[, that] [a] threat of future injury is not enough,' and that the threat `must have arisen without the negligence or fault of the person who insists upon it as a defense.'" Id., quoting People v. Merhige, 212 Mich. 601, 610-611, 180 N.W. 418 (1920).
The ability of a defendant charged with being a felon in possession of *485 a firearm[1] to employ a defense of duress should not be a matter of great debate. Our Supreme Court recognized in Lemons that "[d]uress is a common-law affirmative defense" and applies in situations "where the crime committed avoids a greater harm." Lemons, supra at 245-246, 562 N.W.2d 447. In Dixon v. United States, 548 U.S. 1, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006), the United States Supreme Court assumed that duress constituted a viable defense to an analogous federal statute criminalizing the acquisition of a firearm while under indictment, 18 USC 922(n). See also People v. Hernandez-Garcia, 477 Mich. 1039, 1041, 728 N.W.2d 406, in which our Supreme Court presumed that duress could constitute a defense to a charge of carrying a concealed weapon, MCL 750.227(2), and United States v. Mason, 344 U.S. App DC 91, 94, 233 F.3d 619 (2000) ("Both the Government and the defendant agree that there is a `justification' defense to a felon's possession of a gun in violation of [18 USC 922(g)(1)].").[2]
Although defendant in the instant case labeled his defense "self-defense" rather than "duress," he unquestionably presented to the jury a scenario entirely consistent with a classic duress defense. The initial jury instruction given by the trial court properly encapsulated a duress defense:
As to being a felon in possession, [Dupree] claims that the gun was produced in a struggle. And of course, if that's the case that the gun was produced during the course of a struggle and you find that it happened that way, that would be a defense to felon in possession provided you find that he did not keep the gun in his possession any longer than necessary to defend himself.
However, instead of giving this instruction, the trial court inexplicably informed the jury regarding the elements of "innocent possession," a different and distinct defense.
Courts have applied the defense of temporary innocent possession in felonious weapon or drug possession contexts under circumstances that do not present an imminent threat of bodily injury or death. For example, in Mason, the defendant, a convicted felon, found a weapon in a paper bag near a schoolyard. He was arrested after he carried the weapon into the Library of Congress, and claimed that he intended to give the gun an officer who worked at the library. In People v. Martin, 25 Cal.4th 1180, 1191, 108 Cal.Rptr.2d 599, 25 P.3d 1081 (2001), the California Supreme Court applied the innocent possession defense to the momentary or transitory possession of contraband for the purpose of disposing it. The courts recognizing an innocent possession defense generally emphasize that otherwise criminal possession of contraband may qualify as truly innocent only if a defendant promptly turns the contraband over to the police. But no court has engrafted this requirement onto the duress defense. As the dissent appears to recognize, the innocent possession defense played no role in this case.[3]
*486 Despite acknowledging the irrelevance of the innocent possession instruction read by the trial court, the dissent opines that providing the instruction was beneficial to defendants cause and gave defendant an opportunity to have his misconduct (illegally possessing a firearm) excused by the jury. Post at 489 (emphasis in original). I respectfully disagree. The instruction given actually foreclosed any possibility that the jury would excuse defendants brief possession of a firearm because it injected an unnecessary requirement turning the weapon over to the police that defendant unquestionably had not fulfilled. The trial courts instruction was not merely imperfect, it essentially instructed the jury that defendant had failed to prove an essential element of the defense.
Furthermore, I respectfully reject the dissents contention that provision of the incorrect instruction at least gave defendant some slight ability to defend against this charge, more than had no instruction been given at all. Post at 489. Defendant requested, and the trial court initially gave, a self-defense instruction that justified defendants brief possession of the gun. When the trial court added to the instruction the requirement that defendant had to promptly turn the weapon over to the police, it negated defendants claim of self-defense.
When a defendant raises the duress defense, the prosecution has the burden of showing, beyond a reasonable doubt, that the defendant did not act under duress. People v. Field, 28 Mich.App. 476, 478, 184 N.W.2d 551 (1970). Similarly, [o]nce evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt. People v. Fortson, 202 Mich.App. 13, 20, 507 N.W.2d 763 (1993). The trial courts instruction here that defendant bore an obligation to prove that he had intended to deliver the gun to the police at the earliest possible time was not only incorrect under the circumstances of this case, but also impermissibly shifted the burden of proof to defendant. The injection of an inapplicable element into defendants self-defense or duress claim decreased the prosecutions burden to negate these claims. Furthermore, because a defendant has a state and federal constitutional right to present a defense, [i]nstructional errors that directly affect a defendants theory of defense can infringe a defendants due process right to present a defense. People v. Kurr, 253 Mich.App. 317, 326-327, 654 N.W.2d 651 (2002).
In my view, the incorrect instruction provided by the trial court qualified as preserved constitutional error.[4] Preserved constitutional error requires reversal unless the error is shown to be harmless beyond a reasonable doubt. People v. Carines, 460 Mich. 750, 774, 597 N.W.2d 130 (1999). The jury disbelieved all the prosecution's witnesses and determined that defendant had acted in self-defense. While the facts are somewhat unclear with respect to whether defendant gave up possession of the weapon as soon as the claimed duress had lost its coercive force, Lemons, supra at 247 n. 18, 562 N.W.2d 447, sufficient evidence supported a rational conclusion that defendant did not have a reasonable opportunity to safely escape from Damon Reeves without taking the gun. Whether defendant then possessed the gun longer than absolutely necessary *487 inherently involves a judgment concerning defendants credibility, a question for the jury. Because it appears likely that the jury rested its verdict entirely on the basis that defendant lacked any intent to turn the weapon over to the police, in my view the instructional error was not harmless beyond a reasonable doubt.
MURRAY, P.J., (dissenting).
We granted defendant's delayed application for leave to appeal to decide whether defendant's conviction for being a felon in possession of a firearm, MCL 750.224f, should be reversed. For the reasons that follow, and with all due respect to my colleagues, I would affirm the conviction.
The only issue properly raised on appeal is whether the trial court erred in instructing the jury on the defense of temporary innocent possession as a defense to the charge of felon-in-possession. As explained below, although the trial court erred in giving the instruction on temporary innocent possession, the error was harmless.
Jury instructions must fairly present the issues to be tried and sufficiently protect a defendant's rights. People v. Aldrich, 246 Mich.App. 101, 124, 631 N.W.2d 67 (2001). The instructions must include all elements of the charged offenses and must not exclude relevant issues, defenses, and theories if supported by the evidence. People v. McGhee, 268 Mich.App. 600, 606, 709 N.W.2d 595 (2005); People v. Canales, 243 Mich.App. 571, 574, 624 N.W.2d 439 (2000). Instructional errors are presumed to be harmless, MCL 769.26, but the presumption "may be rebutted by a showing that the error resulted in a miscarriage of justice," People v. Lukity, 460 Mich. 484, 493, 596 N.W.2d 607 (1999).
Following closing arguments, the trial court instructed the jury on the elements of felon-in-possession[1] and informed the jury that the parties stipulated that defendant had been previously convicted of a specified felony. Additionally, and without any request from defendant or the prosecutor, the trial court provided the jury with an instruction on the defense of temporary innocent possession to the charge of felon-in-possession. The instruction was as follows:
As to being a felon in possession, he claims that the gun was produced in a struggle. And of course, if that's the case that the gun was produced during the course of a struggle and you find that it happened that way, that would be a defense to felon in possession provided you find that he did not keep the gun in his possession any longer than necessary to defend himself.
After the jury was excused from the courtroom, defense counsel objected to the language that the weapon could not be held "any longer than necessary to defend himself." The trial court, after again noting that defendant had not requested any defense instruction for this charge, requested that defense counsel provide any law that supported a modified instruction.[2]
Three days later, before the jury was to begin its deliberations, defense counsel was unable to provide the trial court with any relevant law on the issue. However, *488 the prosecution noted that pending before the Supreme Court was People v. Hernandez-Garcia, 474 Mich. 1000, 708 N.W.2d 108 (2006), in which the Court was faced with a similar issue whether a "momentary innocent possession" defense existed to a charge of carrying a concealed weapon. The trial court then noted that on the basis of People v. Coffey, 153 Mich.App. 311, 395 N.W.2d 250 (1986), People v. Weeder, 469 Mich. 493, 674 N.W.2d 372 (2004), and United States v. Mason, 344 U.S.App.D.C. 91, 233 F.3d 619 (2000), the prior instruction should be modified to include a requirement that defendant intended to "deliver the gun to the police at the earliest possible time." Over defense objection,[3] the trial court then gave the jury another instruction that expanded on the temporary innocent possession defense:
I'm not going to repeat what the elements of [felon in possession of a weapon] are. But the defense isthere is a defense to that. And if the person had a brief or momentary possession of the weapon based on necessity, that's a defense to being a felon in possession. And the elements to that are that the defendant had the gun because he had taken it from someone else who was in wrongful possession of it, or he took it from him because of necessity, because he needed to. Second, that the possession after the taking of the gun was brief. And third, that it was the defendant's intention to deliver the gun to the police at the earliest possible time. The law imposes that duty as a concomitant part of that.
After this modified instruction was read to the jury, and at the conclusion of its deliberations, defendant was convicted of felon-in-possession.
In reviewing de novo this assertion of instructional error, People v. Heikkinen, 250 Mich.App. 322, 327, 646 N.W.2d 190 (2002), I agree with the majority that the trial court erred in instructing the jury on the defense of temporary innocent possession to the felon-in-possession charge. However, I disagree that this was not harmless error.
Although not decided at the time the trial court instructed the jury, since then the Michigan Supreme Court addressed a similar issue in People v. Hernandez-Garcia, 477 Mich. 1039, 1040, 728 N.W.2d 406 (2007), in which it held that momentary innocent possession of a concealed weapon was not a defense to a charge of unlawfully carrying a concealed weapon. In so holding, the Court overruled Coffey, one of the three cases explicitly relied on by the trial court and from which the language for the instruction seems to have come. Id. Hence, the Michigan law that supported the trial court's instruction is no longer good law, and the instruction provided was erroneous.[4]
As with carrying a concealed weapon, People v. Hernandez-Garcia, 266 Mich. App. 416, 418, 701 N.W.2d 191 (2005), affirmed in part and vacated in part on other grounds 477 Mich. 1039, 728 N.W.2d 406 (2007), and felony-firearm, People v. Burgess, 419 Mich. 305, 308, 353 N.W.2d 444 *489 (1984), felon-in-possession is a general intent crime. A general intent crime requires only "the intent to perform the physical act itself." People v. Fennell, 260 Mich.App. 261, 266, 677 N.W.2d 66 (2004) (citation and quotation marks omitted). The felon-in-possession statute prohibits a person convicted of a felony from possessing a firearm. MCL 750.224f. Because momentary innocent possession is not a defense to general intent crimes involving possession of a weapon, the trial court erred when it instructed the jury that this was a defense to felon-in-possession.[5]
This instructional error was clearly harmless. Indeed, providing the instruction was beneficial to defendant's cause and gave defendant an opportunity to have his misconduct (illegally possessing a firearm) excused by the jury. This holds true because, as noted throughout this opinion, defendant never requested an instruction on any defense to this charge. In other words, because defendant stipulated that he had committed a specified felony, and because no defense instruction was requested and defendant admitted possessing a gun, his chances of acquittal were nonexistent. Thus, the incorrect instruction at least gave defendant some slight ability to defend against this charge, more than had no instruction been given at all. The trial court even recognized that fact when defendant objected to part of the initial justification instruction. Unfortunately for defendant, however, the jury apparently did not find that the facts supported this defense. Consequently, defendant would have been in no better position had the instruction not been given, and because the instruction on the elements of the crime was otherwise correct, the instructional error was harmless.
A finding of harmless error would normally conclude the analysis. However, the lead opinion does not simply reject the temporary innocent possession defense, but goes on to propose that a federal justification defense that was neither requested nor provided should be recognized in Michigan. However, as I will explain later, the facts as testified to by defendant do not support an instruction under the hybrid defense of justification (which incorporates some elements of the defenses of duress and self-defense) as adopted by the lead opinion.
Before addressing the lack of a factual basis for that type of instruction, it is important to emphasize that defendant never requested any instructions on justification, self-defense, or duress in relation to the felon-in-possession charge. Indeed, the trial court specifically noted, and defense counsel acknowledged, that defendant never requested instructions with regard to any defenses to felon-in-possession,[6] and only objected to a part of the temporary innocent possession instruction that the trial court raised and *490 gave sua sponte. For that reason, any argument to our Court that a justification, self defense, or duress instruction should have been provided has been waived, unless the failure to provide the instruction resulted in manifest injustice. People v. Messenger, 221 Mich.App. 171, 177, 561 N.W.2d 463 (1997).[7] Here, even if Michigan law recognized any one of these as a defense to a felon-in-possession charge, because the evidence did not support a self-defense, duress, or justification instruction to the charge of felon-in-possession, the failure to so instruct did not constitute manifest injustice. This conclusion does not, as suggested by the concurring opinion, usurp the jury's fact-finding role. Instead, it assumes the truth of defendant's own testimony and concludes whether that testimony can legally support the defense. This is completely proper in application of the harmless error test. People v. Kelly, 231 Mich.App. 627, 644-645, 588 N.W.2d 480 (1998).
The defense of self-defense permits a defendant who is in reasonable fear of imminent danger to push back against the attacker with that amount of force necessary to defend himself. People v. Riddle, 467 Mich. 116, 119, 649 N.W.2d 30 (2002); People v. Kemp, 202 Mich.App. 318, 322, 508 N.W.2d 184 (1993). Defendant was charged with, and acquitted of, an offense that involved the use of force against another. The charge of felon-in-possession, however, did not necessarily arise specifically from that incident. Indeed, the charge also arose out of defendant's continued possession of the firearm after Reeves had left the premises. Since the jury could have reasonably concluded that defendant possessed the firearm after the physical confrontation ended (a fact that defendant testified to at trial), the evidence did not support the defense of self-defense.[8] See, e.g., People v. Truong (After Remand), 218 Mich.App. 325, 328, 337-338, 553 N.W.2d 692 (1996) (finding no imminent danger to support a claim of self-defense when the decedent had attacked the defendants two days earlier and had threatened to kill the defendants in the future); Kemp, supra at 321-323, 508 N.W.2d 184 (finding self-defense inapplicable when the defendant proceeded into a house after the victim, who was holding a gun, had already closed the door as the defendant approached the house).
The evidence similarly did not support the defense of duress, which is applicable in situations in which the crime was committed to avoid a greater harm. People v. Lemons, 454 Mich. 234, 245-246, 562 N.W.2d 447 (1997). A successful duress defense excuses the defendant from an otherwise-criminal act because he was compelled to commit the act, the compulsion or duress overcame the defendant's free will, and his actions lacked the required mens rea. People v. Luther, 394 Mich. 619, 622, 232 N.W.2d 184 (1975). Again, defendant testified that he continued to hold onto the gun after Reeves had left the premises and after he had entered his girlfriend's vehicle and driven away. Clearly, there was no duress at that point *491 in time, and so the evidence did not support a duress instruction.[9]
Finally, rather than adopting the federal justification defense to a felon-in-possession charge, I would hold that because the facts do not reasonably support the defense, it should not be established in this case as a new rule of law in this state. The justification defense recognized by many state and federal courts is "`very narrow[ ]'" and is to be used only in "`extraordinary circumstances'" where there is "`imminent danger.'" United States v. White, 552 F.3d 240, 247 (C.A.2, 2009), quoting in part United States v. Deleveaux, 205 F.3d 1292, 1297 (C.A.11, 2000) and United States v. Perrin, 45 F.3d 869, 874-875 (C.A.4, 1995).
In light of the evidence in this case, the defense is unavailable because defendant possessed the firearm longer than absolutely necessary after any threat of "imminent danger" ended. See, e.g., United States v. Lemon, 824 F.2d 763, 765 (C.A.9, 1987) (finding that no imminent danger existed when the defendant's attacker had left the scene); see, also, United States v. Nolan, 700 F.2d 479, 484 (C.A.9, 1983) (holding that the justification defense was inapplicable when the defendant pursued the alleged assailant after the assailant left the bar). Indeed, "[i]t has been only on the rarest of occasions that our sister circuits have found defendants to be in the type of imminent danger that would warrant the application of a justification defense." Perrin, supra at 874. Instructive is United States v. Williams, 389 F.3d 402, 404 (C.A.2, 2004), in which the defendant admitted that he took a firearm from a 15 year old to "`get the gun off the street,'" and while he was headed for an incinerator to dispose of the gun, he dropped it when confronted by the police. While assuming that a necessity defense was available to a federal firearm possession charge, the court held that the defendant's possession "extended ... possession of a firearm far beyond the fleeting sort of possession" illustrated by the caselaw. Id. at 405.
In sum, I would affirm defendant's conviction because the trial court's instruction was harmless error and defendant has waived any argument that a justification or other similar defense should have been provided. Additionally, even if defendant had made such a request, it would not have applied in this case.
I would affirm.
NOTES
[1] As the prosecution in this case has noted, our Supreme Court has specifically held that there is no momentary innocent possession defense to MCL 750.224f. People v. Hernandez-Garcia, 477 Mich. 1039, 1040, 728 N.W.2d 406 (2007), overruling People v. Coffey, 153 Mich.App. 311, 395 N.W.2d 250 (1986). However, the momentary innocent possession defense adopted by the Court in Coffey was not premised on traditional common-law defenses such as duress and self-defense. See Coffey, 153 Mich.App. at 314-315, 395 N.W.2d 250. Further, although our Supreme Court briefly mentioned the defense of duress in Hernandez-Garcia, it did not directly address whether and to what extent that defense was applicable. See Hernandez-Garcia, 477 Mich. at 1041, 728 N.W.2d 406 (order), 1042 (CAVANAGH, J., dissenting).
[2] I note that Michigan courts have already determined that statutes criminalizing the possession of weapons generally require proof that the person charged knowingly possessed the weapon even in the absence of statutory language to that effect. See Hernandez-Garcia, 477 Mich. at 1040 n. 1, 728 N.W.2d 406 (noting that, in order to be convicted of carrying a concealed weapon, MCL 750.227, the accused must have knowingly possessed the weapon); People v. Davis, 126 Mich.App. 66, 69, 337 N.W.2d 315 (1983) (noting that, in order to be convicted of carrying or possessing a firearm during the commission of a felony, MCL 750.227b, the defendant must have knowingly possessed the firearm).
[3] See State v. Padilla, 114 Hawai`i 507, 513-514, 164 P.3d 765 (Hawai'i App., 2007) (recognizing a justification defense to being a felon-in-possession if the possession is immediately necessary to protect the defendant or another from serious physical harm); State v. Parker, 127 Wash.App. 352, 354-355, 110 P.3d 1152 (2005) (recognizing a necessity defense to felon-in-possession statute and listing elements); People v. Jones, 4 Misc.3d 782, 787, 781 N.Y.S.2d 852 (2004) (recognizing justification defense for felon-in-possession); Humphrey v. Commonwealth, 37 Va.App. 36, 47-48, 553 S.E.2d 546 (2001) (holding that, because the legislature did not abrogate the common-law defenses applicable to the felon-in-possession statute, the defendant could proffer the affirmative defense of necessity); Commonwealth v. McCambridge, 44 Mass. App. 285, 291, 690 N.E.2d 470 (1998) (recognizing necessity defense); Ex parte Taylor, 636 So.2d 1246, 1247 (Ala., 1993) (recognizing that self-defense is a defense to a charge of possession of a firearm); State v. Castrillo, 112 N.M. 766, 770-773, 819 P.2d 1324 (1991) (holding that duress is an affirmative defense to the otherwise nearly strict liability imposed by New Mexico's prohibition against possession of firearms by felons); Marrero v. State, 516 So.2d 1052, 1054-1055 (Fla.App., 1987) (recognizing a limited justification defense to being a felon-in-possession); People v. Govan, 169 Ill.App.3d 329, 336, 119 Ill.Dec. 825, 523 N.E.2d 581 (1988) (describing defense of necessity); State v. Crawford, 308 Md. 683, 698-699, 521 A.2d 1193 (1987) (recognizing a necessity defense to a charge of being a felon-in-possession); State v. Blache, 480 So.2d 304 (La., 1985) (adopting defense of justification for charge of being a felon-in-possession).
[4] The prosecution relies on the fact that Dupree was not entitled to have an instruction on momentary innocent possession for the proposition that the trial court's instructions could not have prejudiced Dupree. This argument assumes that either Dupree was not entitled to present a defense of duress or self-defense to a charge of being a felon-in-possession or that the instructions did not adversely affect Dupree's defense. However, as discussed earlier, I have concluded that Dupree was entitled to present a justification defense based on duress or self-defense. Likewise, to the extent that the jury might have been able to consider self-defense as a justification, the trial court specifically instructed the jury that its momentary innocent possession instruction modified its earlier instruction that Dupree would not be guilty of being a felon-in-possession if he acquired the gun during the struggle and only kept it as long as necessary to defend himself. Thus, the latter instruction effectively nullified Dupree's defense to this charge.
[1] MCL 750.224f.
[2] Several courts have criticized or rejected the analysis in Mason. See, e.g., United States v. Gilbert, 430 F.3d 215, 220 (C.A.4, 2005); United States v. Mercado, 412 F.3d 243, 252 (C.A.1, 2005); United States v. Baker, 508 F.3d 1321, 1325 (C.A.10, 2007).
[3] The dissent correctly observes that other courts have rejected the central holding in Mason, which permits an "innocent possession" defense under limited circumstances. But it bears emphasizing that neither the lead opinion nor this concurrence relies on Mason's holding. Rather, both Judge KELLY and I recognize that the innocent possession defense was entirely inapplicable in this case.
[4] Regardless of whether defendant forfeited or waived more specific instructions regarding his duress defense, defendant indisputably objected to the instruction regarding his intent to deliver the gun to the police at the earliest possible time.
[1] Specifically, the trial court accurately instructed the jury that the prosecution

has to prove the following two elements: First, the defendant possessed or used a firearm in this State. Second, that the defendant was convicted of a specified felony which precludes him from being eligible to possess or use a firearm in this State possess, use or transport a firearm in this State.
[2] The jury did not begin deliberations that day and was ordered to return to court three days later to begin deliberations.
[3] Although defendant had no caselaw to support his objection, he argued that there was no legal requirement that "the defendant's intention [was] to deliver the gun to the police at the earliest possible time." But as the trial court correctly concluded, our caselaw at that time provided for that exact defense to a charge of carrying a concealed weapon. Coffey, supra at 315, 395 N.W.2d 250 (applying that defense to carrying a concealed weapon).
[4] Though Weeder contains some discussion about the evidence needed to support a requested instruction that was not given, see Weeder, supra at 499 n. 3, 674 N.W.2d 372, it does not address the specific instruction at issue here.
[5] Mason, to the extent that itlike Coffey held that there is a momentary innocent possession defense, stands in isolation amongst the federal landscape on this issue. That the opinion stands alone, however, is not necessarily reason enough to reject its analysis. But, in my view, the more recent appellate authority that rejects the Mason court's analysis as inconsistent with the plain language of the federal felon-in-possession statute is much more persuasive. See, e.g., United States v. Baker, 508 F.3d 1321, 1325-1327 (C.A.10, 2007); United States v. Johnson, 459 F.3d 990, 996-997 (C.A.9, 2006), and United States v. Gilbert, 430 F.3d 215, 218-220 (C.A.4, 2005), and the cases they cite.
[6] Both the lead opinion and the concurrence seem to overlook that fact, but the whole premise of their conclusion is based on transforming a duress defense (that was never requested) into a justification defense (that was never requested).
[7] Or it could also be safely concluded that defendant has waived the issue by failing to raise the issue before the trial court. As noted, defendant never requested any defense instruction on this charge, so he should be precluded from now seeking appellate relief on an issue not raised below. See People v. Grant, 445 Mich. 535, 546, 520 N.W.2d 123 (1994).
[8] Indeed, defense counsel's objection to part of the "innocent possession" instruction was the concern that the jury could convict defendant on the basis of the fact that he possessed the gun after the incident was over.
[9] The concurring opinion states that recognition of the duress defense to felon-in-possession "should not be a matter of great debate," yet only cites opinions that have either "presumed" or "assumed" (but not decided) that such a defense exists to similar crimes. Ante at 484-85. Apparently the "great debate" has not yet crystallized into a decision on this exact issue.