# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 19, 2015

Plaintiff-Appellee,

v

No. 319640
Muskegon Circuit Court
LC No. 12-062459-FC

CRAIG REGINALD LEWIS,

Defendant-Appellant.

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for second-degree murder, MCL 750.317; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a fourth habitual offender, MCL 769.12, to 39 to 63 years' imprisonment for the murder conviction and to 2 years' imprisonment for the felony-firearm conviction. We affirm.

Defendant was at the house of Frank Harris in Muskegon Heights on the night of August 15, 2012. Defendant was in the possession of a firearm that night. Several other people were also at Harris's house that night. Most of the people there were outside, milling about the yard and drinking alcohol, but Harris, his fiancé Kourtney Perry, and Dominique Smith were inside the house. At around midnight, Derico Ruff and a man known as Kool-Aid had an altercation outside the home. Davitta Jones entered Harris's house and told Harris about the altercation. Harris proceeded outside, followed by Smith, and Harris attempted to stop the fighting. Defendant told Harris and Smith that they could not stop the fighting. Defendant then began to argue with Smith, and Harris pleaded with defendant and Smith not to fight. Defendant responded by telling Harris, "you can get it too boy." Defendant next turned to his friend Tarnaz Johnson, who had defendant's gun, and asked Johnson to give him the gun. Harris then fled, running toward his house in an effort to get away from defendant. Defendant fired his gun multiple times in Harris's direction. Harris was found shot in the head just inside his house near the side door on the south side of the home. Harris died of this wound on August 28, 2012. Russell Karsten, a Michigan State Trooper, found seven bullet holes in the south side of the house, two of which were in the side door. While there was some evidence that conflicted with a portion of the events described in the preceding passage, the passage is nevertheless fully supported by record testimony.

-1-

Defendant admitted that he shot his gun in Harris's direction, but claimed that he did so in self-defense. Defendant testified that after Harris told defendant and Smith to stop fighting, Harris shoved defendant, and then Harris returned to his home. According to defendant, he then retrieved his gun from Johnson and harmlessly fired one shot into the air. Next, defendant headed to his car to leave, but Harris began shooting at defendant from the side door of the house. Defendant fell down by the rear of his vehicle and returned fire in Harris's direction. Defendant claimed that he discharged his gun solely in self-defense. Defendant testified that he was shot in the leg. After the shooting, defendant drove to Detroit. He visited a friend and then traveled to his brother Stanley Rayford's house, arriving there at about 9:00 or 10:00 a.m. on the morning after the shooting. Trooper Karsten testified that there was damage to the rear of defendant's automobile consistent with the car having been hit with gunfire from the outside, but Karsten could not determine whether this damage occurred on the night of the incident.

On appeal, defendant first argues that there was insufficient evidence showing that he did not act in self-defense when shooting at Harris. We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

To convict a defendant of second-degree murder, "the prosecution must prove: '(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.' " *People v Roper*, 286 Mich App 77, 84; 777 NW2d 483 (2009), quoting *People v Mayhew*, 236 Mich App 112, 125; 600 NW2d 370 (1999). An act of true self-defense can "justify" or "excuse" a crime. *People v Dupree*, 284 Mich App 89, 99-100; 771 NW2d 470 (2009), aff'd 486 Mich 693; 788 NW2d 399 (2010). The Self-Defense Act (SDA), MCL 780.971 *et seq*., governed this case, and it provides in relevant part as follows:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if . . . the following applies:

(a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972.]

"In general, a defendant does not act in justifiable self-defense when he or she uses excessive force *or when the defendant is the initial aggressor.*" *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (emphasis added), citing *Dupree*, 486 Mich at 707. "[T]he aggressor is the one who first does acts of such nature as would ordinarily lead to a deadly combat or as would put the other person involved in fear of death or serious bodily injury." *People v Van Horn (On Remand)*, 64 Mich App 112, 115; 235 NW2d 80 (1975) (citation and quotation marks omitted). " 'Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt.' " *Roper*, 286 Mich App at 86, quoting *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993).

Defendant injected the issue of self-defense by testifying that he shot at Harris only because Harris first shot at him and defendant feared for his life. This placed the burden on the prosecution to prove beyond a reasonable doubt that defendant did not act in self-defense. The prosecution met that burden. Smith and Ruff both testified that defendant was the only person whom they saw with a gun at Harris's house that night. And Perry testified that Harris did not have a gun that night. Further, officers found no bullet casings outside the house in the area in which defendant claimed Harris had been shooting. Based on this testimony and the testimony discussed earlier in this opinion, there was abundant evidence showing that defendant was the aggressor, that Harris never shot at defendant or did anything that justified or excused defendant's actions, and that defendant shot at Harris multiple times after Harris had fled back to his house. Viewing the evidence in a light most favorable to the prosecution, resolving all conflicts in the evidence in the prosecution's favor, and deferring to the jury's assessments of witness credibility, we hold that there was sufficient evidence establishing that the killing was not justified or excused, as defendant did not act in an honest and reasonable belief that the use of deadly force was necessary. Reversal is unwarranted.

Next, defendant argues that the trial court abused its discretion in excluding as hearsay Rayford's proffered testimony that defendant told him that he had been shot when defendant arrived at Rayford's house. Assuming that the trial court erred in excluding the testimony, we hold that the error was harmless, as defendant has not established the requisite prejudice, i.e., that it is more probable than not that he would have been acquitted but for the presumed error. MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). Defendant already testified that he had been shot in the leg, and Rayford was able to testify that defendant's leg was bandaged and that, when the bandage was removed, he observed a bleeding gash across defendant's leg. Rayford was also allowed to testify that defendant told him how he incurred the injury. Under these circumstances, having Rayford testify to defendant's actual statement about being shot would have added little to the defense. Taking that into consideration in conjunction with the strong evidence of guilt, reversal is unwarranted as any assumed error was harmless.

Next, defendant raises some issues in his standard 4 brief. First, he challenges the trial court's decision to allow jurors to submit questions for the witnesses. This issue was not preserved, and is reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. MCR 2.513(I) expressly provides that "the court may permit the jurors to ask questions of

witnesses." Furthermore, our Supreme Court has held that "[t]he practice of permitting questions to witnesses propounded by jurors should rest in the sound discretion of the trial court." *People v Heard*, 388 Mich 182, 187; 200 NW2d 73 (1972). Therefore, there was no plain error when the trial court allowed jurors to submit questions for the witnesses. Additionally, while defendant argues a due process violation related to the allowance of juror questions, he has not shown a plain constitutional error in this regard.

Next, defendant argues that the prosecution committed misconduct when, in its opening statement, the prosecution described Harris as having tried to calm the altercations in his yard, depicted defendant as having acted aggressively toward Harris, and stated that Harris had run back to the house when defendant retrieved his gun from Johnson. However, in making these statements, the prosecution was merely stating the facts to be proven at trial, summarizing the anticipated testimony. *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010). These statements were nothing more than "proper comments regarding the evidence the prosecutor intended to present." *Mayhew*, 236 Mich App at 123. And, there is evidence in the record to support each of these statements. Therefore, the prosecution did not commit misconduct in its opening statement.

Finally, defendant argues that defense counsel was ineffective for failing to object to the juror questions that were directed to Rayford and for failing to object to the prosecution's alleged misconduct in the opening statement with respect to the remarks discussed in the preceding paragraph. Given that, for the reasons discussed above, there was nothing improper about the juror-submitted questions and the prosecutor's opening statement, counsel's performance was not deficient, *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), as any objections would have been futile, *People v Chambers*, 277 Mich App 1, 11; 742 NW2d 610 (2007). Reversal is unwarranted.

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra