PEOPLE v CANALES

Docket No. 221452. Submitted October 11, 2000, at Grand Rapids. Decided
December 12, 2000, at 9:15 A.M. Leave to appeal sought.

Geronimo Canales, originally charged with assault with intent to do
great bodily harm, was convicted by a jury in the Kent Circuit
Court, H. David Soet, J., of felonious assault for hitting his son in
the head with a baseball bat while both were on the porch of the
defendant's dwelling. The defendant appealed, claiming that the
trial court erred when instructing the jury about the defendant's
claim of self-defense by telling the jury to consider whether the
defendant could have safely retreated when his son allegedly
assaulted him before the defendant swung the bat.

The Court of Appeals *held*:

The general rule regarding self-defense is that retreat to avoid
using deadly force is required where it is safe to do so. A well-
established exception to the duty to retreat is that a person is not
obliged to retreat if assaulted in the person's dwelling. The porch of
a dwelling is part of the dwelling for purposes of the no retreat
rule.

In this case, the trial court erred in instructing the jury that it
could consider whether the defendant could have retreated when
he was allegedly assaulted by his son on the porch of the defen-
dant's dwelling.

Reversed and remanded for a new trial.

ASSAULT — SELF-DEFENSE — DUTY TO RETREAT — OWN DWELLING.

A person assaulted in the person's dwelling is not subject to a duty to
retreat to avoid using deadly force to repel the assailant; the porch
of a dwelling is part of the dwelling for purposes of this no retreat
rule (MCL 750.84; MSA 28.279).

*Jennifer M. Granholm*, Attorney General, *Thomas
L. Casey*, Solicitor General, *William A. Forsyth*, Pros-
ecuting Attorney, *Timothy K. McMorrow*, Chief
Appellate Attorney, and *Vicki L. Seidl*, Assistant Pros-
ecuting Attorney, for the people.

State Appellate Defender (by *Desiree M. Ferguson*), for the defendant on appeal.

Before: Fitzgerald, P.J., and Hood and McDonald, JJ.

McDonald, J. Defendant was charged with assault with intent to do great bodily harm, MCL 750.84; MSA 28.279. Following a jury trial, defendant was convicted of the lesser included offense of felonious assault, MCL 750.82; MSA 28.277. Defendant was sentenced as a third habitual offender, pursuant to MCL 769.11; MSA 28.1083, to 2½ to 8 years' imprisonment. Defendant appeals as of right. We reverse and remand.

Defendant was convicted for hitting his adult son, Jerry Canales, Jr., in the head with a bat, causing serious injuries. Defendant claimed that he acted in self-defense. The basic facts are undisputed. Defendant, his two adult sons, and some other people were gathered at defendant's home playing cards and drinking. At some point in the early evening Jerry and defendant's other son, Marty, got into a fight. They began to wrestle on the floor, the fight continued into another room, and defendant intervened. According to Jerry, defendant punched him in the face, and then defendant and Marty both attacked him. Defendant and Marty testified that Jerry was uncontrollable and violent, and that they merely tried to calm him down. Defendant and Marty also testified that Jerry threatened to kill them. Jerry then left defendant's house with his wife.

A few minutes later Jerry returned to defendant's home with his wife and two of his friends. Defendant and Marty testified that they assumed Jerry was look-

ing for a fight when he returned with his friends. In contrast, Jerry testified that he had brought his friends with him in order to help him carry his belongings out of defendant's house. At the time, Jerry had been staying with defendant while working out some marital problems. As Jerry came up the walk, defendant, Marty, and a friend of defendant's came out of the house onto the porch. Defendant and Jerry began yelling at each other. Jerry was standing in the yard, at the foot of the steps to the porch, behind a gas grill. According to Jerry, the argument became heated and defendant asked Marty to hand him the bat, then came down the porch steps and swung it at Jerry. Jerry claimed that he tried to pick up the gas grill to block the swinging bat. Defendant claimed that Jerry said he was going to kill defendant, picked up the grill, and came up the porch stairs toward defendant. Defendant testified that he swung the bat in self-defense to block the grill. Jerry's wife corroborated Jerry's version of the events, while Marty's testimony was consistent with defendant's version.

At trial, the trial court instructed the jury, pursuant to CJI2d 7.16, that the jury could consider whether defendant could have safely retreated when deciding whether defendant acted in self-defense.[1] The trial

---

[1] The trial court instructed the jury:

By law, a person must avoid using deadly force if he can safely do so. If the defendant could have safely retreated, but did not do so, you can consider that fact, along with all the other circumstances, when you decide whether he went farther in protecting himself or his son than he should have.

However, if the defendant honestly and reasonably believed that it was immediately necessary to use deadly force to protect himself or his son from an imminent threat of death or serious injury, the

court reasoned that defendant had a duty to retreat because he was on the front porch at the time of the offense, which the trial court stated was a public area.

Defendant first argues the trial court erroneously instructed the jury that defendant had a duty to retreat. Defendant argues he did not have a duty to retreat because he was attacked in his own dwelling.

This Court reviews jury instructions in their entirety to determine whether the trial court committed error requiring reversal. *People v Piper*, 223 Mich App 642, 648; 567 NW2d 483 (1997). Jury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them. *People v Reed*, 393 Mich 342, 349-350; 224 NW2d 867 (1975); *Piper*, *supra* at 648. Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights. *Id.* Error does not result from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction. *Id.*

In Michigan, the general rule regarding self-defense is that retreat to avoid using deadly force is required where it is safe to do so. *People v Stallworth*, 364 Mich 528, 535; 111 NW2d 742 (1961). There is a well-established exception to the duty to retreat, articulated long ago by the Michigan Supreme Court, that "a man is not, however, obliged to retreat if assaulted in his dwelling." *Pond v People*, 8 Mich 150, 177

law does not require him to retreat. He may stand his ground and use the amount of force he believes necessary to protect himself or the other person.

(1860). The question presented in this case is whether defendant was "in his dwelling" when he swung the baseball bat on his front porch. We answer this question, which appears to be one of first impression in Michigan, affirmatively.

In *People v Godsey*, 54 Mich App 316, 320; 220 NW2d 801 (1974), this Court explained that *Pond*, *supra*, had previously been "frequently cited for the proposition that the term 'dwelling' embraces the curtilage of a house and correspondingly extends the area within which one is not obliged to retreat beyond the mere physical structure utilized as an abode." (Citations omitted.) However, in *Godsey*, *supra* at 321, this Court clarified that *Pond* did not extend the right of self-defense without retreat that expansively. Instead, this Court stated that it read *Pond* "as extending that right only to inhabited outbuildings located within the curtilage of the home." *Id.* In *Pond*, *supra* at 181, the Court held that the defendant did not have a duty to retreat from his net house, which was located about thirty-six feet from his actual home. In *Godsey*, *supra* at 320-321, this Court relied on the fact that the net house at issue in *Pond* was used "as a permanent dormitory" for the defendant's servants. Accordingly, in *Godsey*, *supra* at 321, this Court concluded that "the trial court did not err in failing to instruct the jury with respect to the 'no retreat in dwelling' rule" where the defendant came off his porch and delivered the fatal blows to the victim in the yard.[2]

---

[2] Like defendant in this case, in the defendant *Godsey*, *supra* at 318, also struck the victim with a baseball bat.

While this Court has applied *Godsey, supra,* in various contexts, our research has not revealed any Michigan case addressing whether the porch is considered part of the dwelling for purposes of the no retreat in dwelling rule. However, we note that the supreme courts of Ohio and New Jersey have both ruled that one is not required to retreat from the porch. *State v Williford,* 49 Ohio St 3d 247; 551 NE2d 1279 (1990); *State v Bonano,* 59 NJ 515; 284 A2d 345 (1971). In *Williford, supra* at 250, the court held that in light of testimony that the confrontation took place inside the defendant's house and on the porch, the trial court erred in failing to instruct the jury that the defendant had no duty to retreat from his home. Importantly, in *Bonano, supra* at 520, the New Jersey Supreme Court rejected the rule that the privilege of self-defense without retreat expands to the curtilage of the home, and limited its acceptance of the rule of no retreat "to those cases where the defendant is actually in his dwelling house." The court added, "A porch or similar physical appurtenance is deemed to come within this concept." *Id.*

Furthermore, we look to the home invasion statute, MCL 750.110a; MSA 28.305(a), which defines "dwelling" in subsection 1(a) as "a structure or shelter that is used permanently or temporarily as a place of abode, including an appurtenant structure attached to that structure or shelter." This statutory definition of "dwelling" clearly encompasses a porch. The commentary to CJI2d 7.17, the no duty to retreat while in own dwelling instruction, references this statute, and we find it to be persuasive.

For these reasons, we find that the porch is part of the home for purposes of the no retreat rule, and the

trial court incorrectly instructed the jury that defendant had a duty to retreat in this case. Furthermore, the error, which was preserved, was not harmless. A trial court's failure to instruct the jury that a person has no duty to retreat in one's own home, where appropriate, constitutes error requiring reversal. *People v Fisher*, 166 Mich App 699, 711; 420 NW2d 858 (1988), rev'd on other grounds after second remand, *People v Fisher*, 442 Mich 560; 503 NW2d 50 (1993). Defendant's conviction must be reversed.

Defendant also argues the trial court erred in refusing to give a "missing witness" instruction where the prosecutor failed to produce a res gestae witness, Kenneth Klekotka. In light of our reversal of defendant's conviction, it is not necessary for us to resolve this issue. We briefly comment on the law pertaining to this issue for the benefit of the parties and the trial court on remand.

Under the amended statute, MCL 767.40a; MSA 28.980(1), the prosecutor no longer has a duty to produce res gestae witnesses. *People v Snider*, 239 Mich App 393, 422-423; 608 NW2d 502 (2000). Instead, the statute imposes a continuing duty on the prosecutor to advise the defense of all res gestae witnesses that the prosecution intends to produce at trial. *Id.* The inability of the prosecution to locate a witness listed on the prosecution's witness list after the exercise of due diligence constitutes good cause to strike the witness from the list. *Id.*

Reversed and remanded for a new trial. We do not retain jurisdiction.