# STATE OF MICHIGAN

# COURT OF APPEALS

In re JAWAN SPEARS, Minor.

PEOPLE OF THE STATE OF MICHIGAN,

                Petitioner-Appellee,

v

JAWAN SPEARS,

                Respondent-Appellant.

UNPUBLISHED
December 23, 2014

No. 317712
Wayne Circuit Court
Juvenile Division
LC No. 10-496968-DL

Before: O'CONNELL, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

A jury found respondent responsible for three counts of armed robbery, MCL 750.529, and a violation of Detroit City Ordinance, § 33-3-1, for violating curfew. The jury found respondent not responsible for one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The court ordered intensive in-home probation. Respondent appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. FACTS & PROCEDURAL HISTORY

Respondent's adjudications arise out of the events that occurred in the early morning hours of February 9, 2013. At 1:00 a.m. that morning, Deon Thomas parked his van on the side of the street across from his father's house located on Lauder Street in Detroit. Deon was at his father's house to pick up his brother, Marvin Thomas. Deon parked the van and went inside the house to get Marvin. After about 10 minutes, Deon came out of the house and sat in the driver's seat of the van waiting for Marvin.

Marvin came out of the house and began loading a futon mattress into the rear driver's side door of the van. Deon was sitting in the driver's seat of the van, Deon's girlfriend, Whitney Reynolds, was in the front passenger seat of the van, and Deon's three year old nephew, Dalin, was in the back passenger seat in a car seat.

While Marvin was loading the futon mattress, Deon heard "yelling" and "some sort of argument" to his left. Deon then saw respondent pointing a revolver at Marvin. Respondent told Marvin, "give me all your money." Respondent then hit Marvin on the top of his head with the

-1-

gun. Thinking that a robbery was occurring, Deon rolled down the window to the van and reached his hand into his pocket to grab some money. Deon did not want to pull out all the money he had in his pocket, so he "pull[ed] a few bills off the top" and gave respondent the money. After giving respondent the money, another man standing behind respondent yelled, "Take him out the car." At that point, respondent opened the driver-side van door, pointed the gun at Deon, and respondent took the remaining money out of Deon's right pocket.

After reaching into Deon's pocket, respondent walked around to the other side of the van, opened the van door, pointed the gun at Reynolds and dumped the contents of Reynolds's purse on the ground. As respondent was dumping the contents of Reynolds's purse, Marvin ran to that side of the van and "lunged" for respondent's gun. Deon was running behind Marvin when Marvin "lunged" for the gun. A tussle then ensued between Deon, Marvin, respondent and the other man. During the tussle, Marvin was hit by the other person with a "wheel lock" on his forearm. The gun was dropped during the tussle and Deon and Marvin restrained respondent.

At some point during the tussle, Reynolds honked the car horn in order to get Marvin's father to come out of his house. Reynolds then ran onto the porch of the home and banged on the windows and door of the house, screaming for help. When the other man saw Marvin's father come to the front door, he got into a car that was parked nearby and drove away.

Deon and Marvin held respondent down on the ground, and then Marvin placed respondent in a headlock and moved him to the porch of the house of Marvin's father. Marvin's father called the police. Marvin kept his arms wrapped around respondent until the police arrived about 10 to 15 minutes later. Once the police arrived, Marvin was transported to a hospital and subsequently received staples in his head.

Respondent was adjudicated as a minor. Before the delinquency jury trial, the prosecution endorsed Detroit Police Officer Waldis Johnson pursuant to MCL 767.40a(3). On the third and final day of trial, the prosecution informed the court that Officer Johnson had failed to appear at court that morning, explaining as follows:

> I had [ ] Officer Waldis Johnson served yesterday, personally served by our investigative team. He was at home in Belville. He is a witness that I would really like to call. He was one of the Respondents on the scene, and I think he has some viable information to contribute in speaking with him. He did call me back. I had to make attempts to get in touch with him over the last couple weeks. As we've discussed multiple times off the record, apparently his wife had a miscarriage approximately three weeks ago. He has not been back to work in that time, which incidentally coincides with the time I was trying to get in touch. I did not have an earlier subpoena, but did get the one he was personally served with approximately 3:00 yesterday. He understood, he got the subpoena and remembered the date and intended to come in. It is now about ten minutes to ten at this point. I anticipate that he will show up. I don't have any information about whether or not he will. I made a phone call to the number I have for him, it's a cell phone, and that went straight to voice mail. I did leave a voice mail, but I haven't gotten anything back. But if he does show up, I anticipate . . . he has some information about some statements that the young man made. I don't

intent[sic]to bring that testimony out myself. I'm not sure it's particularly probative, but beyond that . . . is to request that the Court bar [defense counsel] from trying to elicit any of that testimony regarding what [respondent] said.

Defense counsel responded as follows:

First, your Honor, if the officer does not show up, because the officer is germane to out [sic] theory of the case, to the theory this was a fight and not a robbery—and we do believe that's the testimony that the officer would provide to the Court and to the jury-would be germane to my client's defense, so if the officer does not show up, I would move for the case to be dismissed with prejudice. My client is entitled to a fair trial. We have – I don't know if he's a reluctant witness or not, but for him to not be here would deprive my client of an adequate defense in regards to having his necessary witness present. If the Court does not dismiss the case with prejudice, I would certainly be calling the officer, if the officer shows up, your Honor, to elicit statements that were made by my client to the officer during an investigation. . . .

My client made some statements to him by direct questioning from the officer, and I would certainly like the jury to hear the statements made by my client to the officer because again, it goes to our theory of our case. It goes to our defense, it goes to the hearsay exception as to my client's state of mind regarding this incident as opposed to how he saw—how he viewed the incident. . . .

The trial court denied defense counsel's request to dismiss the case, stating "I'm not sure I understand this motion you're making regarding statements made by [respondent] to the officer." The trial proceeded and Officer Johnson did not appear to testify. The trial court did not provide a missing witness instruction. Respondent was adjudicated as set forth above and he appeals as of right.

## II. ANALYSIS

Respondent first contends that he was denied a fair trial because the prosecutor failed to exercise due diligence to produce Officer Johnson.

At trial, defense counsel essentially objected to the prosecution's failure to produce Officer Johnson when counsel asked the court to dismiss the case upon learning of the officer's absence. Therefore, we will consider this aspect of respondent's appeal preserved for our review. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994). "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

Respondent contends that Officer Johnson was a res gestae witness that was required to be identified and produced at trial because he was on the prosecution's witness list. "A res gestae witness is a person who witnesses some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts." *People v O'Quinn*, 185 Mich App 40, 44; 460 NW2d 264 (1990), overruled in part on other grounds *People v*

*Koonce*, 466 Mich 515; 648 NW2d 153 (2002). In this case, Officer Johnson was a responding officer. He did not witness any part of the criminal transaction. The criminal transaction was completed at the time police arrived at the Thomas household where respondent was being held. Thus, contrary to respondent's contention on appeal, Officer Johnson was not a res gestae witness. To the extent that respondent contends that he was prejudiced because Officer Johnson was a listed witness who did not appear at trial, this argument lacks merit.

MCL 767.40a governs a prosecutor's duties with respect to witnesses and it provides in relevant part as follows:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> (3) Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.

> (4) *The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown* or by stipulation of the parties. [Emphasis added.]

In this case, the prosecutor listed Officer Johnson as a witness who would be called at trial in accord with MCL 767.40a(3). The prosecutor was entitled to remove Officer Johnson from its witness list "at any time" "upon leave of the court for good cause shown." MCL 767.40a(4). "The inability of the prosecution to locate a witness listed on the prosecution's witness list after the exercise of due diligence constitutes good cause to strike the witness from the list." *People v Canales*, 243 Mich App 571, 577; 624 NW2d 439 (2000). Here, the prosecution exercised due diligence in attempting to produce Officer Johnson. The officer was apparently on a leave of absence from work; the prosecutor personally called the officer during the "last couple weeks" before trial. The prosecutor indicated that he spoke with the officer before trial. When the officer did not appear at trial, the prosecutor had the officer personally served with a subpoena and the officer indicated that he understood and intended to appear at trial. When the officer was not at the court the following morning, the prosecutor again attempted to call the officer and he left a voice mail. For some reason, the officer failed to appear at trial. These circumstances indicate that the prosecutor made a good-faith effort to produce the officer at trial. The prosecutor contacted the officer before trial and spoke with him. When the officer did not appear at court as planned, the prosecutor had the officer served with a subpoena delivered at the officer's home, and the prosecutor again called the officer on the third and final day of trial to no avail. In doing so, the prosecutor exercised due diligence in attempting to locate the witness and the officer's failure to appear at trial amounted to good cause to strike him from the witness list. MCL 767.40a(4); *Canales*, 243 Mich App at 577.

-4-

Moreover, even if respondent was able to show that the prosecutor did not exercise due diligence, respondent cannot show that "it is more probable than not that the error was outcome determinative." *Lukity*, 460 Mich at 496. At trial, defense counsel indicated that he planned to have Officer Johnson testify about the statements that respondent made during a police interview. However, this testimony would have amounted to inadmissible hearsay under MRE 801(c). Here, respondent was not seeking to offer the statements against the party who made the statements, which was himself, but rather sought to use the statements to bolster his own credibility. Thus, the statements were not admissible under MRE 801(d)(2). Furthermore, contrary to defense counsel's argument at trial, the statements respondent made to Officer Johnson were not admissible under MRE 803(3), to show respondent's state of mind. That exception does not cover statements "of memory or belief to prove the fact remembered or believed . . . ." MRE 803(3). Thus, contrary to trial counsel's argument, respondent's statements were not admissible to show how respondent "viewed this incident."

In short, there was good cause to strike Officer Johnson from the witness list and respondent cannot otherwise show how the officer's absence prejudiced his defense where the testimony that he planned to elicit from the officer was barred under the hearsay rules.

Respondent also contends that the trial court should have held a due diligence hearing pursuant to *People v Pearson*, 404 Mich 698; 273 NW2d 856 (1979), after the prosecution failed to produce Officer Johnson. This argument lacks merit. First, *Pearson* is no longer good law. See *People v Cook*, 266 Mich App 290, 295; 702 NW2d 613 (2005). Second, as discussed above, the prosecutor did exercise due diligence in attempting to produce Officer Johnson and there was no need to hold a hearing where there was good cause to strike the witness from the witness list. Third, and finally, a hearing was not necessary where, as discussed above, respondent could not have used the officer's testimony as a vehicle to introduce his own out of court statements as he planned to do at trial.

Next, respondent argues that the trial court erred in failing to provide a missing witness instruction. Respondent waived this issue for review when trial counsel affirmatively approved the court's instructions on the record. See *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (an explicit approval of an instruction constitutes waiver). Moreover, even if we were to consider this issue, given that there was good cause to strike the witness from the witness list, the missing-witness instruction was not warranted. See *People v Snider*, 239 Mich App 393, 422-423; 608 NW2d 502 (2000) (the missing witness instruction is not warranted where the prosecution exercises due diligence and the court excuses production of the witness).

Finally, respondent contends that trial counsel rendered ineffective assistance of counsel when he failed to demand a due diligence hearing pursuant to *Pearson*, 404 Mich at 698, and failed to object to the court's omission of the missing witness instruction. However, as discussed above, neither the hearing nor the instruction were warranted in this case. Accordingly, respondent's claims of ineffective assistance of counsel fail. See *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (counsel is not ineffective for failing to raise a futile objection or advance a meritless position).

Affirmed.

/s/ Peter D. O'Connell
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher