# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 28, 2018

Plaintiff-Appellee,

v

No. 328572
Macomb Circuit Court
LC No. 2015-000099-FC

GERALD ANDREW KUPINSKI,

Defendant-Appellant.

Before: MURPHY, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Gerald Andrew Kupinski, appeals as of right his jury convictions of felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The jury acquitted defendant of an additional charge of second-degree murder, MCL 750.317. The court sentenced defendant to 38 to 60 months in prison for the felon-in-possession conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. We vacate defendant's convictions and sentences and remand for a new trial.

This case arises out of the shooting death of Adam Abraham in defendant's home. Defendant admitted that he used his wife's gun to shoot Abraham, his defense being that he acted in self-defense and in defense of his family members. For purposes of the felon-in-possession charge, defendant stipulated that he had previously been convicted of a specified felony and was ineligible to possess a firearm on the date of the shooting. Defendant initially denied any prior relationship with Abraham, and defendant's wife claimed to have committed the shooting. However, defendant's wife was shown not to have been home at the time. Defendant's teenage son, however, was there during the incident.

Specifically, the defense theory was that: (1) Abraham was an "associate" of convicted felon Dino Lukas, (2) Lukas owed defendant a substantial sum of money and had become annoyed by defendant's attempts to collect the debt, (3) as a result, Lukas prompted Abraham to either assault or kill defendant, (4) on the night of the shooting, an intoxicated Abraham came to defendant's home unannounced, dressed entirely in black, with a knife and a handgun, (5) defendant, in fear for his life, and that of his teenage son, obtained his wife's handgun from her gun safe, and (6) after defendant let Abraham in, Abraham pulled out a handgun, and defendant reacted by fatally shooting him. Abraham was intoxicated at the time of the shooting, and

-1-

although emergency responders disrupted the scene, a gun was found with Abraham's DNA on the gun and its ammunition.

At trial, defendant was represented by 2 attorneys. The parties agreed that the model criminal jury instructions for use of deadly force in self-defense, M Crim JI 7.15, and use of deadly force in defense of another, M Crim JI 7.21, would be provided with minor alterations. Specifically, they agreed that both self-defense and defense of others could serve as valid affirmative defenses to all three charged offenses, but that, as drafted, M Crim JI 7.15 and M Crim JI 7.21 only directly addressed the second-degree murder charge (i.e., defendant's *use* of deadly force). Consequently, the parties agreed that M Crim JI 7.15 and M Crim JI 7.21 would be modified to recognize that self-defense and defense of others could constitute a valid defense to each charge against defendant, further agreeing that M Crim JI 11.34c (the model instruction specifically addressing self-defense as it relates to felony-firearm) would thus be rendered repetitive and unnecessary. The modified instructions agreed upon by the parties were subsequently provided to the jury.

On appeal, defendant argues that his trial attorneys performed ineffectively by, among other things, failing to ensure that the jury received proper instructions regarding self-defense and defense of others as affirmative defenses to felon in possession of a firearm.[1] We agree.

The issue of whether trial counsel properly sought an appropriate jury instruction was addressed at the *Ginther*[2] hearing, albeit briefly. Although the trial court did not address the issue in its ruling, because defendant raised the issue below and pursues it on appeal, it is preserved for this Court's review. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). "[W]hether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Counsel is presumed to have been effective, and a defendant must show both that counsel performed objectively unreasonably and a "reasonable probability" that the outcome of the proceedings would have differed if counsel had performed effectively. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). Counsel is afforded a wide degree of latitude to make strategic decisions. See *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

In pertinent part, MCR 2.512(D)(2) provides that the model criminal jury instructions "must be given in each action in which jury instructions are given if (a) they are applicable, (b) they accurately state the applicable law, and (c) they are requested by a party." However, as tacitly recognized in Michigan Nonstandard Jury Instructions, Criminal, § 13:22, which includes a proposed instruction for self-defense as it relates to felon in possession of a firearm, there is no

---

[1] To the extent defendant also attempts to raise this issue as a direct claim of instructional error, his efforts are misplaced. Defendant's trial attorneys waived any claim of instructional error by expressly approving the instructions that were subsequently read to the jury. See *People v Kowalski*, 489 Mich 488, 503-505; 803 NW2d 200 (2011).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*model* instruction for that affirmative defense. Hence, in this instance the allegation is not that defendant's trial attorneys failed to request an applicable model instruction. Rather, it is that they agreed to largely rely on the model instructions, specifically M Crim JI 7.15 and M Crim JI 7.21, for a matter that those model instructions do not properly address. Defendant does not contend that the instructions as given were inappropriate to his felony-firearm or second-degree murder charges.

Our Supreme Court has recognized that "the traditional common law affirmative defense of self-defense is generally available to a defendant charged with being a felon in possession if supported by sufficient evidence." *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010) (*Dupree II*), affirming the result of *People v Dupree*, 284 Mich App 89; 771 NW2d 470 (2009) (*Dupree I*). The Self-Defense Act (SDA), 780.971 *et seq*., has since "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Id*. at 708. Notwithstanding the codification, "a felon possessing a firearm is not precluded from raising self-defense under the SDA when there is evidence that would allow a jury to conclude that criminal possession of a firearm was" appropriately justified. *People v Guajardo*, 300 Mich App 26, 40; 832 NW2d 409 (2013).

The prosecutor argues that the evidence failed to show that defendant's "resort to potentially lethal force satisfied the legal standard for necessity" or that defendant "took and maintained possession of a firearm only for the time necessary to respond to an imminent threat," relying on this Court's note about relevant circumstances in *Guajardo*, 300 Mich App at 40 n 4. We observe that the prosecution explicitly agreed to such instructions below, and it was the prosecution, not the defense, that prepared the proposed instructions that attempted to modify M Crim JI 7.15 and M Crim JI 7.21 to fit felon in possession of a firearm. Additionally, we disagree. Defendant asserted in a written statement that he obtained the gun-safe code from his wife, and then obtained the handgun, only after an unidentified man dressed fully in black, with black gloves, showed up at defendant's house unannounced after dark. Similarly, evidence was introduced showing that Abraham was armed with a knife and a revolver not registered in his name, that Abraham had communicated to others his intention of confronting defendant, that Abraham had an inclination toward violence and "busting in" to others' premises, and that Abraham had reason to be upset with defendant because defendant had recently cut Abraham out of a planned heist. It was the jury's prerogative to credit or reject the evidence of how or when defendant obtained the handgun, whether defendant had adequate reason to believe his possession of the handgun was necessary, and the credibility of the witnesses. See *People v Hardiman*, 466 Mich 417, 430-431; 646 NW2d 158 (2002) and *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013).

The prosecutor further argues that a reasonable person in defendant's position would have summoned the police instead of arming himself, and that a reasonable person would not have allowed Abraham to enter the house. The latter may suggest negligence or fault for inviting the threat, but that is a relevant consideration for purposes of a duress defense, see *People v Lemons*, 454 Mich 234, 247; 562 NW2d 447 (1997), and the prosecution cites no authority that it is relevant for purposes of self-defense or defense of others. Likewise, while summoning the police might have been prudent, Abraham's alleged reputation for "busting in" to the premises of others also supports a finding that defendant could reasonably have believed that he lacked the time required to call 911 and await an unpredictable amount of time for the police to respond.

-3-

Again, such a decision is plausible, and it is the role of the jury to evaluate credibility and choose what evidence to accept.

We appreciate the prosecutor's argument that "both the amount of time an accused possessed a firearm and the manner in which an accused came into possession of the firearm can be part of a totality-of-the-circumstances inquiry into whether there is evidence that a felon's possession of a firearm was justified because the felon honestly and reasonably believed that the use of deadly force was necessary to prevent imminent death, great bodily harm, or sexual assault." *Guajardo*, 300 Mich App at 40 n 4. As noted, the jury has the exclusive right to determine whether, as the prosecution argues, defendant armed himself before it was necessary to do so. Furthermore, our Supreme Court concluded that a self-defense instruction was warranted even though the defendant possessed the gun for some time after the shooting. See *id*.; see also *Dupree II*, 486 Mich at 699, 708. Although the facts here pertain to defendant's alleged possession prior to the shooting, there is evidence from which the jury could reasonably conclude that he only retrieved it *after* he may have had a reasonable and honest belief that there was an imminent threat of death or great bodily to himself and his son. We therefore do not believe defendant's possession of the gun for longer than the literal amount of time taken to perform the act of shooting it inherently precludes a self-defense instruction.

Defendant was therefore entitled to a proper jury instruction regarding self-defense and defense of others as to his felon in possession charge. "Even if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). We find that the instructions as given did not sufficiently address defendant's felon in possession charge.

The model jury instructions used, M Crim JI 7.15 and M Crim JI 7.21, are drafted to state the essential elements of self-defense and defense of others as those affirmative defenses relate to assaultive crimes, generally homicides. Because a person need not use a firearm to wield deadly force, neither instruction specifically addresses firearms. Significantly, the instructions to the jury explicitly stated, twice, that "at the time he acted the defendant must not have been engaged in the commission of a crime." As it pertains to a felon-in-possession charge, however, this creates a Catch-22: after the jury was instructed that defendant's possession of a firearm on the date in question was a criminal offense, it was further instructed that—as to all three charged offenses—defendant could not assert self-defense or defense of others if he was committing a crime at the time he used deadly force. This was akin to instructing the jury that if defendant used lethal force to kill Abraham, it followed that he had committed a criminal act, and ergo he was not entitled to assert self-defense or defense of others as a defense against the second-degree murder charge. The SDA, however, explicitly preserves "an individual's right to use deadly force or force other than deadly force in self-defense or defense of another individual as provided by the common law of this state in existence on October 1, 2006." MCL 780.973. We note also that unaltered, M Crim JI 7.15 contains no requirement that a defendant must not have been engaged in the commission of a crime. A reasonably competent defense attorney would have objected, arguing that, as modified, the versions of M Crim JI 7.15 and M Crim JI 7.21 provided to the jury did not state a valid defense to felon in possession of a firearm.

On this record, we can conceive of no valid strategic rationalization for counsel's failure to object or to request different instructions. Notwithstanding the great deference given to strategic decisions made by trial counsel, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. At the *Ginther* hearing, when one of the defense attorneys was asked about the defense theory of the case, he acknowledged that "[t]here was evidence that supported at least the idea that one could have become a felon in possession in the self defense or enter a self-defense theory, . . . which . . . could in turn . . . tie into . . . the felony firearm charge." Additionally, at trial, both defense attorneys argued extensively about the need to tailor M Crim JI 7.15 and M Crim JI 7.21 to cover felon in possession of a firearm, explicitly citing *Dupree II* in support. Hence, counsels' decision regarding the jury instructions cannot be rationalized as a decision to focus the defense on the second-degree murder charge to the detriment of defending against the less serious charges. Although that might have been a facially reasonable strategy, it was not the strategy that the defense attorneys actually pursued in this case. The instructions approved of by counsel were directly contrary to the rule of law set forth in *Guajardo*, 300 Mich App at 40 and n 4, for no justifiable reason. Because it is undisputed that defendant was inside his own home at all relevant times, we respectfully fail to perceive the relevance of our concurring colleague's discussion of the requirements for a defendant to claim the independent and additional statutory right to stand one's ground under the SDA.

We therefore find that trial counsel's performance fell below an objective standard of reasonableness. We also find that defendant has established a "reasonable probability" that this error affected the outcome of the proceedings. Establishing a "reasonable probability" requires less than a preponderance of evidence. *Trakhtenberg*, 493 Mich at 56. Although we cannot know for certain why the jury acquitted defendant of second-degree murder, there is at least a significant likelihood that the jury found that the prosecution had failed to disprove beyond a reasonable doubt that defendant did not act in self-defense or defense of others when he shot Abraham. Indeed, on the record, we are persuaded that a rational juror could have reached that conclusion. Consequently, there is a reasonable probability that, had the jury been properly instructed on self-defense and defense of others as they relate to felon in possession of a firearm, it might have acquitted defendant of felon in possession of a firearm, eliminating the only possible predicate felony for felony-firearm. Therefore, defendant has carried his heavy burden of establishing a valid claim of ineffective assistance of counsel.

"The remedy for deprivation of the Sixth Amendment right to counsel must be tailored to the injury suffered." *People v Whitfield*, 214 Mich App 348, 354; 543 NW2d 347 (1995). "The appropriate remedy on a finding of ineffective assistance of counsel is retrial and not the discharge of the defendant." *People v Gridiron*, 439 Mich 880, 880; 476 NW2d 411 (1991). However, double jeopardy prevents defendant from being retried for the second-degree murder charge, because he was previously acquitted by a jury. See *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007). Accordingly, we vacate defendant's convictions and sentences and remand for a new trial with regard to felony-firearm and felon in possession of a firearm only. In

-5-

light of this disposition, we do not consider or decide defendant's remaining claims of error on appeal, all of which are rendered moot by our instant decision.

Vacated and remanded for a new trial in accordance with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Amy Ronayne Krause