*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 1, 2021

Plaintiff-Appellee,

v

No. 351385
Macomb Circuit Court
LC No. 2018-004147-FH

EZEL NOOR EAS ALNUAIMI,

Defendant-Appellant.

Before: STEPHENS, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant, Ezel Noor Eas Alnuaimi, appeals as of right his jury trial conviction for third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (penetration by force or coercion). The trial court sentenced defendant to 44 to 180 months' imprisonment. On appeal, defendant argues that he was denied the effective assistance of counsel at trial for several reasons. In addition, he asserts that the jury was not properly instructed in regard to the defense's theory of the case. However, we conclude that these assertions are without merit and affirm defendant's conviction and sentence.

## I. FACTUAL BACKGROUND

This case arises out of the criminal sexual assault of the complainant that occurred at defendant's apartment. The complainant testified at trial that he met defendant through a cellular phone application (app) called "Scruff." According to the complainant, Scruff is a gay dating or "hook up" app. The complainant initiated contact with defendant through the app and the two planned to meet in person for sex. The complainant arrived at defendant's apartment after completing his shift at work delivering pizzas. Defendant met the complainant at the door and let him into the apartment. Defendant's cousin—who was also his roommate—was sitting in the living room.

The complainant and defendant immediately went into defendant's bedroom and started kissing. The complainant undressed to his underwear. Defendant then removed his shirt, and at that point, the complainant indicated that he did not want to do anything sexual because he was not attracted to defendant. Defendant offered the complainant a massage and the complainant

-1-

agreed. The complainant was lying on the bed on his stomach with defendant straddling his back. Defendant became aggressive, and started removing the complainant's underwear. The complainant again stated that he did not want to do anything sexual. But, defendant said, "no, we are going to." Defendant held down the complainant's arms and anally penetrated him for 5 to 10 minutes. The complainant said that it hurt and he was having trouble breathing because defendant was holding him down. However, the complainant kept saying "no." Defendant told the complainant that if he tried to leave, defendant would also have his cousin have sex with him. The complainant feared for his safety, but he did not attempt to leave because he thought that the incident would escalate. Defendant told the complainant to perform oral sex on him. The complainant testified that he did so because he did not want to get hurt; he did not tell defendant that he did not want to do it. After a couple of minutes, defendant told the complainant to leave because he was no longer of any use to defendant. The complainant got dressed and left the apartment.

In the parking lot, the complainant encountered a couple who lived in the same building as defendant. The complainant asked them for help, reporting that he had been raped and that he was injured. The wife consoled the complainant while the husband called the police. Police officers arrived and spoke with the complainant and the couple. The complainant participated in an interview at the police station and then submitted to a medical exam. Defendant was taken into custody for questioning.

Sexual Assault Nurse Examiner (SANE) Elizabeth MacDonald testified that she examined the complainant. She described the complainant as shocked and traumatized. He had bruises on his upper right arm and his right wrist. There was also redness and point tenderness on the complainant's anus. MacDonald clarified that she did not know whether the injuries resulted from consensual or nonconsensual sex.

Defendant was charged with two counts of CSC-III; one count concerning anal penetration and the other count involving oral penetration. Following a two-day trial, the jury found defendant guilty of one count of CSC-III (the count involving anal penetration). The jury found defendant not guilty of the count of CSC-III, involving oral penetration. This appeal followed.

II. ANALYSIS

A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that a remand for an evidentiary hearing is necessary to determine whether he was denied the effective assistance of counsel at trial.[1] We disagree.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

---

[1] This Court denied defendant's initial motion to remand. *People v Alnuaimi*, unpublished order of the Court of Appeals, entered August 26, 2020 (Docket No. 351385).

However, because this Court denied defendant's motion for remand, this Court's review of his ineffective assistance of counsel claim is limited to errors apparent on the record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2010).

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*. "This Court will not substitute [its] judgment for that of counsel on matters of trial strategy, nor will [this Court] use the benefit of hindsight when assessing counsel's competence." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted; alterations in original). The defendant "bears the burden of establishing the factual predicate of his claim." *Id*. (quotation marks and citation omitted).

In this case, defendant asks this Court to remand this case to the trial court for an evidentiary hearing to investigate whether defendant was denied the effective assistance of counsel at trial. Remand motions in this Court are addressed in MCR 7.211(C)(1). MCR 7.211(C)(1)(a) provides that a motion to remand to the trial court must identify the issue sought to be reviewed and show that (*i*) the issue is one that is of record and that must be initially decided by the trial court; or (*ii*) development of a factual record is required for appellate consideration of the issue. MCR 7.211(C)(1)(a)(ii) requires that "[a] motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing."

Defendant asserts that a remand is necessary for the trial court to make a finding in regard to his claim that his counsel was ineffective. However, defendant failed to provide an offer of proof, such as an affidavit, identifying facts that would be established at an evidentiary hearing as required by MCR 7.211(C)(1)(a)(ii). Defendant does not explain the witnesses he plans to call or the testimony he expects to present at an evidentiary hearing. Therefore, "defendant has not set forth any additional facts that would require development of a record to determine if defense counsel was ineffective." *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007). Moreover, defendant's brief does not even address how counsel's alleged errors were prejudicial. See *Sabin (On Second Remand)*, 242 Mich App at 659. As a result, defendant has not shown that a remand would be necessary or beneficial. See *Williams*, 275 Mich App at 200.

Additionally, defendant has not established the factual predicate for his claim of ineffective assistance of counsel. *Cooper*, 309 Mich App at 80. See also *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) ("Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position."). At any rate, we will consider the grounds upon which he contends that defense counsel was ineffective.

## 1. LACK OF LOYALTY

Defendant first argues that counsel was ineffective for exhibiting a complete lack of loyalty toward defendant throughout the lower court proceedings for several reasons. As an initial matter,

defendant does not suggest that defense counsel had a conflict of interest that would affect his loyalty to defendant. See *People v Smith*, 456 Mich 543, 556-557; 581 NW2d 654 (1998) (explaining that circumstances involving a conflict of interest constitute a breach of counsel's duty of loyalty). Rather, defendant relies on distinguishable cases from other jurisdictions in support of his assertion. See *People v Spaulding*, 332 Mich App 638, __ n 2; 957 NW2d 843 (2020) (stating that out-of-state cases are not binding on this Court). At any rate, defendant's allegations in this regard are not supported by the record. For instance, defendant complains that defense counsel declined to provide the jury with any background information about him. But defendant does not identify the information that counsel should have presented or how that information would have been helpful to the defense. In addition, as will be discussed later, defendant declined to testify at trial.

Defendant also suggests that defense counsel further alienated him from the jury because counsel referred to him as a foreign national during jury selection even though he is a citizen of the United States. Defendant's assertion is based on the following questions that defense counsel asked prospective jurors during voir dire:

> [*Defense Counsel*]: Now, one thing you probably noticed about all attorneys, we're pretty repetitive. One thing I do want to make clear, and I know you folks have already answered, but anybody have a problem with the fact that Mr. Alnuaimi has difficulty speaking English and has an interpreter here?
>
> *Jurors*: No.
>
> [*Defense Counsel*]: Or the fact that he's a foreign national.
>
> *Jurors*: No.

Although the information in defense counsel's question was incorrect because defendant is a U.S. citizen, considering the context of the question, it was meant to explore the prospective jurors' possible bias against defendant, and thus, the inaccuracy was not detrimental to him. The jurors stated that defendant's English language skills and nationality would not affect their consideration of the case.

Defendant also submits that defense counsel disrespectfully referred to him by his first name, "Ezel" or "Mr. Ezel," while referring to other trial participants by their last names. Even if defense counsel did refer to defendant as "Ezel" on some occasions, he also referred to defendant as "Mr. Alnuaimi" or "Ezel Alnuaimi" on many other occasions. Indeed, at least three of the instances in which defense counsel referred to defendant as "Ezel" was during the testimony of defendant's cousin. As a result, defendant has not shown any extreme disrespect exhibited by defense counsel.

Defendant additionally contends that defense counsel unfairly praised the complainant. In defense counsel's opening statement, he stated the following:

> Again, this is not about attacking the victim at all. [The complainant] is a very fine young man. I believe he goes to college. And it took him a lot to come

and testify at the exam, and it will take a lot for him to come and testify. You folks have to just sit and listen. You can imagine how hard it is for you, and you're all adults. This is a young man that has to come here and he has to answer [the prosecutor's] questions and mine about these things, about the entries, about the chronological order in which they happened and so forth like that. So, it's very difficult for him.

This "praise" is a peculiar and excessive attempt to convey acceptance of the circumstances in this case—that the parties engaged in same-sex sexual activities. Nonetheless, the contention that the complainant is a fine young man fits with defense counsel's overall message that no crime was committed in this case and that the incident was simply the result of a misunderstanding between the parties.

Defendant next asserts that defense counsel improperly implied that the complainant was afraid of defendant because he is of Middle Eastern decent. During defense counsel's opening statement, he offered the following:

Now, this is where there's two different versions that [the complainant] tells. In one version he indicates what he indicates to the police, is that [the complainant]—I'm sorry, that Mr. Alnuaimi has anal sex with him, and they're having sex, and at that point there's a dog that Mr. Alnuaimi has, a little dog, the dog is scratching at the bedroom door. They hear the sound, Mr. Alnuaimi, in Arabic, tells his roommate, who also happens to be his cousin, in Arabic, get the dog away, you know, I'm trying to have some privacy or whatever. [The complainant] hears that, gets a little startled and stuff, and at that point says, you know, I'm a little shook up, and that's when he starts having doubts, whatever, you know, and having some doubts, or whatever. For whatever reason he's showing some hesitance.

This interpretation of the events appears to be based on defendant's preliminary examination testimony. At the preliminary examination, defendant testified that the complainant was happy with everything until he heard defendant tell his cousin to get the dog away from the door in Arabic. According to defendant, the complainant became scared and asked defendant whether defendant was going to kill him. Defendant explained that he asked the complainant why he would kill the complainant. He told the complainant that they were there to have fun. According to defendant, the complainant said, "No, you're Middle Eastern, you try to kill people." At trial, the complainant acknowledged during cross-examination that he knew that defendant was Middle Eastern. He did not recall the dog scratching at the door or defendant talking to his cousin in Arabic, but he said that those events could have happened. Accordingly, defense counsel's opening statement and related questions were based on defendant's explanation of the events and were meant to discredit the complainant's testimony.

Defendant also claims that defense counsel falsely told the jury that defendant's family disavowed him because he was gay. During closing argument, defense counsel stated: "It's unfortunate for all the parties. Don't think that Mr. Alnuaimi hasn't suffered. He's Middle Eastern. They're very much against gay people. All his family knows. They've disavowed him." This portion of the argument concerned counsel's assertion that no crime had been committed in

this case and that both of the parties had suffered as a result of the incident. Although defendant claims on appeal that this statement was false, we have not located anything in the record in support of his contention. Defendant states that family members wrote letters in support of him before sentencing, but those letters are not part of the record. At sentencing, the trial court indicated that it read letters that defense counsel had sent, but did not further elaborate on the details or authors of those letters.

Defendant also contends that counsel argued lack of intent, failure to complete the act, and misunderstanding, which he claims were all irrelevant issues. In his closing argument, defense counsel asserted that no crime had been committed in this case, there was a misunderstanding or miscommunication between the parties, and that defendant stopped when the complainant no longer wanted to participate. These points fit within the defense theory of prior express consent for sex, the eventual withdrawal of that consent, and the timing in which the withdrawal was communicated to defendant, especially considering that defendant did not dispute that oral and anal penetration occurred.

Nevertheless, defendant's allegations concerning counsel's statements during opening or closing arguments do not constitute ineffective assistance of counsel. The trial court specifically provided the following instruction to the jury:

> The lawyers' statements and arguments are not evidence. They are only meant to help you understand the evidence and each side's legal theories. You should only accept things the lawyers say that are supported by the evidence, or by your own common sense and general knowledge.

As a result, any possible prejudice was cured by the jury instructions. *People v Chapo*, 283 Mich App 360, 370; 770 NW2d 68 (2009). "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *Id.* (quotation marks and citation omitted.)

Finally, defendant submits that defense counsel failed to review the presentence investigation report (PSIR) with him before sentencing. However, at the sentencing hearing, counsel informed the trial court that he reviewed the contents of the PSIR with defendant. Further, the trial court allowed additional time for defendant to review the PSIR with counsel and the interpreter. After the break, defendant stated that he reviewed the PSIR and that everything was accurate and he was ready for sentencing. Therefore, defendant's claim that defense counsel failed to review the contents of the PSIR before sentencing is without merit.

Ultimately, although defendant finds fault with the foregoing actions, this conduct does not fall below an objective standard of reasonableness as required to establish a claim of ineffective assistance of counsel. *Sabin (On Second Remand)*, 242 Mich App at 659.

## 2. ADVISING DEFENDANT NOT TO TESTIFY

Defendant further asserts that defense counsel was ineffective for advising him not to testify at trial. Before trial began, defendant told the court that he wished to proceed to trial and tell his side of the story. However, defendant later decided not to testify. The trial court advised defendant that it was his decision whether or not to testify in the following exchange:

[*Trial Court*]: [Defendant], you've been given your rights associated with your right to testify and remain silent. Yes?

[*Defendant*]: Yes.

[*Trial Court*]: And you talked with your attorney.

[*Defendant*]: Yes.

\* \* \*

[*Trial Court*]: So, you're not going to testify?

[*Defendant*]: No.

[*Trial Court*]: And you've had a chance to talk with your attorney, but that's your choice, correct?

[*Defendant*]: Yes.

Defense counsel questioned defendant further:

[*Defense Counsel*]: First of all, Mr. Alnuaimi, you and I have talked about you taking the stand and not taking the stand, practically from day one, is that correct?

[*Defendant*]: Yes.

[*Defense Counsel*]: And today the record is reflected accurately, about 11:30 we broke for lunch, which is two and a half hours ago, you were again provided a chance to rethink it through, and it is your decision to not testify, correct?

[*Defendant*]: Yes.

Moreover, any contention that defendant relied on counsel's erroneous advice not to testify is not supported by the record. Defendant took several actions against counsel's advice. For example, defendant testified at the preliminary examination against his counsel's suggestion. Defendant also disregarded counsel's recommendation to accept the prosecution's plea offer and decided to proceed to trial. Finally, defendant insisted that his cousin testify even after discussing the matter with counsel and initially deciding to forego presenting any testimony. The record shows that defendant was advised of his rights and voluntarily chose not to testify.

### 3. FAILURE TO OBTAIN ACCURATE INTERPRETER

Defendant argues that his counsel failed to obtain an interpreter before trial, and that the interpreter who appeared at trial did not provide accurate translation. First, defendant clearly affirmed at the preliminary examination that he did not require the assistance of an interpreter. However, defendant changed his mind and asked for an interpreter right before trial. The trial

court accommodated that request and an interpreter was present at the start of defendant's trial. Defense counsel explained that there was a delay in defendant's request and thanked the trial court for accommodating the late request. Defendant contends that defense counsel expressed frustration with defendant for requesting an interpreter, but such a suggestion is not supported by the record. Defense counsel explained the circumstances relating to the late request for an interpreter and thanked the court and prosecutor for complying with the request with such short notice.

Moreover, defendant provides absolutely no evidentiary support for his claim that the interpreter's translation was inaccurate. Defendant did not raise any concerns relating to the interpreter at trial. Defendant also does not explain how any alleged translation issues affected the trial court proceedings. See *Traylor*, 245 Mich App at 464. To the extent defendant avers that the translator did not understand certain words, this situation was resolved by the trial court. The complainant explained during his testimony that he was "versatile," meaning that he was both a "top" and a "bottom." The witness further elaborated that "top" meant the giver of sex while the "bottom" meant the receiver of sex. The interpreter informed the trial court that he did not understand the terms "top" and "bottom" in this context. The trial court excused the jury and explained to the interpreter that it was only necessary for the interpreter to translate those terms. It did not matter if the interpreter understood as long as defendant understood. The trial court directed defendant to let the interpreter know if he did not understand something. Defendant did not voice any complaint relating to his understanding. As a result, defendant's claim relating to the accuracy of the interpreter is not supported by the record.

### 4. FAILURE TO OBTAIN ELECTRONIC DISCOVERY

Defendant argues that defense counsel failed to obtain evidence from his cell phone and present that evidence at trial. However, defendant does not identify the evidence that counsel should have presented or how that evidence would have benefitted the defense. See *id*. Instead, defendant offers conclusory statements relating to possible messages that were sent between defendant and the complainant. Considering the complainant's testimony, prior messages would not have been helpful to defendant. The complainant acknowledged that he made initial contact with defendant, that they agreed to meet for sex, that he voluntarily went to defendant's apartment, and that he willingly entered defendant's bedroom and removed his own clothes. Therefore, defendant has failed to show that defense counsel was deficient in this regard.

### 5. FAILURE TO OBJECT TO HEARSAY TESTIMONY

Finally, defendant contends that defense counsel provided ineffective assistance by failing to lodge a hearsay objection to testimony concerning the complainant's prior consistent statements. The jury heard statements made by the complainant to the couple who aided him in the parking lot, SANE nurse MacDonald, and law enforcement officials Rob Nagle and Chris Ashley. Because there was no objection regarding the testimony of these witnesses, the trial court did not address the admissibility of such statements. MRE 801(d)(1)(b) provides that a prior consistent statement "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive" is not inadmissible hearsay. Moreover, MRE 803 provides additional exceptions to the general prohibition against hearsay evidence, such as an excited utterance, MRE 803(2), existing mental, emotional, or physical condition, MRE 803(3), and

statements made for purposes of medical treatment, MRE 803(4). Defendant also had the opportunity to question Detective Ashley about the complainant's inconsistent statements in the police report. According to his testimony, the police report stated that the complainant reported that defendant asked him to perform oral sex after the anal sex, but the complainant refused because there was feces on the condom. Even if any of this testimony was admitted in error, such error was ultimately harmless; because the complainant testified about the incident at trial, the testimony provided by other witnesses was merely cumulative, and "admission of this testimony did not prejudice defendant." *People v Rodriquez (On Remand)*, 216 Mich App 329, 332; 549 NW2d 359 (1996). Thus, defendant failed to establish the second prong of his ineffective assistance of counsel claim. *Sabin (On Second Remand)*, 242 Mich App at 659.

In summary, on the basis of the foregoing discussion, defendant has failed to establish that he was denied the effective assistance of counsel during the lower court proceedings. *Sabin (On Second Remand)*, 242 Mich App at 659.

## B. JURY INSTRUCTIONS

Defendant next argues that the jury was improperly instructed regarding the defense's theory of the case, and that defense counsel provided ineffective assistance for failing to submit an appropriate instruction concerning consent. We disagree.

As an initial matter, defense counsel stipulated to the jury instructions and the verdict form. As a result, defendant has waived any claim related to jury instructions on appeal. *People v Eisen*, 296 Mich App. 326, 329; 820 NW2d 229 (2012). However, it is necessary for this Court to consider this issue to resolve defendant's related claim of ineffective assistance of counsel. *Id*. at 330.

"This Court reviews jury instructions in their entirety to determine whether the trial court committed error requiring reversal." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). Generally, "[j]ury instructions must include all the elements of the charged offense and must not exclude material issues, defenses, and theories if the evidence supports them." *Id*. However, [e]ven if somewhat imperfect, instructions do not create error if they fairly presented the issues for trial and sufficiently protected the defendant's rights. *Id*. In other words, "[e]rror does not result from the omission of an instruction if the charge as a whole covers the substance of the omitted instruction." *Id*.

In this case, the trial court provided the following instruction in regard to the elements of CSC-III:

> The defendant is charged with the crime of third degree criminal sexual conduct. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:

> First, the defendant engaged in a sexual act that involved entry into [the complainant's] anal opening by the defendant's penis. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.

Second, that the defendant used force or coercion to commit the sexual act. Force or coercion means the defendant either used physical force or did something to make [the complainant] reasonably afraid of present or future danger.

The court further provided the following consent instruction:

There has been evidence in this case about the defense of consent, a person consenting to a sexual act by agreeing to it freely and willingly without being forced or coerced. It is not necessary to show that [the complainant] resisted the defendant to prove that this crime was committed. Nor is it necessary to show that [the complainant] did anything to lessen the danger to himself. In deciding whether or not [the complainant] consented to the act, you should consider all the evidence. It may help you to think about the following questions:

Was [the complainant] free to leave and not take part in the sexual act?

Did the defendant threaten [the complainant] with present or future injury?

Did the defendant use force, violence or coercion?

If you find the evidence raises a reasonable doubt as to whether [the complainant] consented to the act freely and willingly, then you must find the defendant not guilty.

This instruction mirrors the model jury instruction for consent in charges for sex crimes. M Crim JI 20.27. "In the context of the CSC statutes, consent can be utilized as a defense to negate the elements of force or coercion." *People v Waltonen*, 272 Mich App 678, 689; 728 NW2d 881 (2006). In *People v Khan*, 80 Mich App. 605, 619 n 5; 264 NW2d 360 (1978), this Court described consent to a sexual act as "a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither 'mentally [disabled],' 'mentally incapacitated,' nor 'physically helpless.' "

The trial court properly instructed the jury that the prosecution was obligated to prove beyond a reasonable doubt that defendant used physical force or coercion to sexually penetrate the complainant. Moreover, the jury was told that if the evidence established that the complainant freely and willingly consented to the act, it must find defendant not guilty. The prosecution asserted that the force or coercion element was satisfied because the complainant testified that defendant held him down on the bed while he repeatedly said no, and because defendant threatened to also have his cousin come and have sex with the complainant if he did not comply. On the other hand, the defense argued that the complainant freely consented to the act and defendant allowed him to leave once the complainant no longer wished to participate. Therefore, the instructions accurately covered the prosecution's theory, and allowed defendant to present his consent theory. Notably, the jury acquitted defendant of the charge relating to the oral penetration. The complainant testified that he performed oral sex on defendant because he did not want to get hurt. He acknowledged that he did not verbalize any objection. As a result, the jury may have concluded that the complainant consented to this act, which negated the necessary force or coercion to support a conviction. See *Waltonen*, 272 Mich App at 689. The given instructions

-10-

"fairly presented the issues for trial and sufficiently protected the defendant's rights." *Canales*, 243 Mich App at 574. Accordingly, defendant has not established any error, or that defense counsel provided ineffective assistance in this regard. *Sabin (On Second Remand)*, 242 Mich App at 659.

Defendant also briefly submits that there was insufficient evidence to support his conviction for CSC-III. However, defendant does not fully address this argument in his brief. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *Matuszak*, 263 Mich App at 59 (quotation marks and citation omitted; alteration in original). Defendant, therefore, has abandoned this issue. *Id.*

Nonetheless, defendant's argument is without merit because the prosecution presented sufficient evidence for a reasonable jury to conclude that defendant was guilty of CSC-III beyond a reasonable doubt.

When reviewing a sufficiency of the evidence claim, this Court reviews the evidence de novo. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). This Court reviews "the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id.* "Further, this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id.*

In this case, the complainant testified that, after undressing, he told defendant that he no longer wanted to do anything sexual, but defendant held him down on the bed and penetrated him while he repeatedly said no. Additionally, defendant also threatened to have his cousin have sex with the complainant if he attempted to leave. SANE nurse MacDonald testified that the complainant had fresh bruises on his arm and wrist, and that he suffered injuries to his anus. Considering this evidence in the light most favorable to the prosecution, *Lane*, 308 Mich App at 57, the jury could reasonably find beyond a reasonable doubt that defendant achieved anal penetration with the complainant using force or coercion. MCL 750.520d(1)(b).

Finally, defendant asserts that his due process rights were violated because the jury was improperly instructed and he was convicted on the basis of insufficient evidence.

"Under our state and federal Constitutions, a person cannot be deprived of life, liberty, or property without due process of law." *People v Joly*, __ Mich App __, __; __ NW2d __ (2021) (Docket No. 354379); slip op at 5, citing Const 1963, art 1, § 17; US Const, Ams V and XIV, § 1. This Court explained that "[i]n the context of criminal proceedings, the denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." *Id.* (quotation marks and citation omitted). "This is a relatively high bar—only if the absence of that fairness fatally infected the judicial process will there be a violation of due process." *Id.* (quotation marks and citation omitted). A court considering a due-process claim, must "look to the totality of the circumstances." *Id.* (quotation marks and citation omitted).

In this case, as discussed, the jury was properly instructed in regard to the elements of the offense and possible defenses. *Canales*, 243 Mich App at 574. Additionally, the prosecution presented sufficient evidence for a reasonable jury to conclude that defendant was guilty of CSC-III beyond a reasonable doubt. *Lane*, 308 Mich App at 57. Accordingly, defendant has not established a violation of his due-process rights. *Joly*, __ Mich App at __; slip op at 5.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien